536 So.2d 541 (1988)
Donald M. JOHNSON and Transylvania Flying Service, Inc.
v.
Bob ODOM, Commissioner of Louisiana Department of Agriculture and the Louisiana Department of Agriculture.
No. CA 871231.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Writ Denied January 27, 1989.
*543 M. Dale Peacock, Monroe, for plaintiffs-appellants Donald M. Johnson, et al.
Winston Riddick, Baton Rouge, for defendants-appellees Bob Odom, et al.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment in the trial court which affirmed the final decision of the Commissioner of Agriculture, Bob Odom (Commissioner), adopting the finding made by the Advisory Commission on Pesticides (ACP) that plaintiff violated the Louisiana Pesticide Law and imposing penalties as a result thereof.[1]

FACTS
Plaintiff, Donald M. Johnson, a certified commercial aerial applicator (crop duster), is the sole shareholder of Transylvania Flying Services, Inc. (TFS), a corporation which engages in the business of the application of pesticides. Both Mr. Johnson and his corporation have over the past several years become the subjects of investigations and proceedings by the Department of Agriculture, the regulating agency responsible for issuing the certification of Mr. Johnson and the license of TFS. Previously, this court reviewed an adjudicatory proceeding involving these parties in Johnson v. Odom, 470 So.2d 988 (La.App. 1st Cir.), writ denied, 476 So.2d 355 (La.1985). The facts as set out therein are helpful in understanding the present status of the parties:
On December 7, 1982, an adjudicatory hearing was held by the Advisory Commission on Pesticides (ACP), pursuant to La.R.S. 3:1621-1642 against, "Donald M. Johnson, d./b./a. Transylvania Flying Service." Mr. Johnson appeared without counsel and was found by the ACP to have violated then La.R.S. 3:1623(A) and Rule 7 of the Rules and Regulations on Mixing and Application of Pesticides by applying the pesticide 2,4,5-T without written authorization from the Commissioner of Agriculture or his duly appointed agent. In addition, he was found to have knowingly made false and fraudulent records in violation of then La.R.S. 3:1634(7), and to have violated then La.R. S. 3:1626(D) by failing to have all mechanically powered equipment used in aerial application prominently displaying proper decals showing that the machinery had been annually inspected by the Commissioner. Further, the Committee found that Mr. Johnson violated then La. R.S. 3:1626(A) by permitting an uncertified applicator to apply pesticides, and that he aided and abetted an uncertified person in violating the Louisiana Pesticide Control Act in violation of then La. R.S. 3:1634(13). Mr. Johnson was fined $1,500 for all five offenses and both the license of TFS and the certification of *544 Mr. Johnson were suspended for a period of six months. By letter dated December 21, 1982, the Commissioner notified Mr. Johnson of his final decision and stated that the $1,500 fine was due and payable to the Department of Agriculture and that Mr. Johnson was prohibited from engaging in activities regulated by the Louisiana Pesticide Control Act for a period of six months. It was further stated that should Mr. Johnson comply with the terms of the suspension, the certification and license would possibly be reinstated after one hundred twenty days. Mr. Johnson paid the $1500 fine on December 30, 1982.
By letter dated January 5, 1983, an attorney representing Mr. Johnson informed the Commissioner that the fine and suspension of certification imposed by the Commissioner was in violation of then La.R.S. 3:1633(A). The Commissioner was requested to reply as soon as possible prior to January 18, 1983, in order to avoid expiration of the appeal delays. Mr. Johnson did not request judicial review of the December 7, 1982, adjudiciation until April 4, 1983, when he sought a temporary restraining order to enjoin a new proceeding against him under former La.R.S. 3:1621-1642. He also sought to have these statutes declared unconstitutional, and prayed to have the final decision of the December 7, 1982, hearing declared null and void. The request for the temporary restraining order was denied and a date was set for a hearing on a preliminary injunction.
Meanwhile, on April 5, 1983, the ACP held another administrative hearing relative to Mr. Johnson's alleged violation of then repealed La.R.S. 3:1634(2) by the aerial application of the pesticide Azodrin on birds in a manner which was inconsistent with the labeling directing the use of that pesticide. The violation allegedly occurred on August 13, 1981. The ACP found that Mr. Johnson had violated former La.R.S. 3:1634(2) and his certification was suspended for one year effective upon the final decision relative to the April 5, 1983, hearing. By letter dated August 19, 1983, the Commissioner notified Mr. Johnson that the decision of the April 5, 1983, hearing was affirmed. However, the Commissioner chose to stay the suspension of Mr. Johnson's certification until the first day following final resolution of any further appeal taken in this matter. On September 19, 1983, Mr. Johnson filed an amended petition seeking judicial review of the Commissioner's final decision.
On July 13, 1983, the ACP again held a separate hearing charging TFS with applying Azodrin on birds. The alleged offense occurred on August 13, 1981, and was the same offense which Johnson individually was found to have committed. The transcript, factual findings and conclusions of law of that hearing were not made available to this court. However, by letter dated August 19, 1983, the Commissioner notified TFS that the decision of the July 13, 1983, hearing had been affirmed and the Commissioner was imposing the recommended penalties of a $500 fine and a one year suspension of the license of TFS. The one year suspension period was to become effective upon final resolution of this matter. By petition filed September 19, 1983, TFS sought permission to intervene in the ongoing proceedings which had commenced on April 4, 1983. A rule to show cause why the intervention should not be allowed was set for October 28, 1983. It is unclear from the record whether the intervention was allowed, however, a supplemental and amending petition was filed on November 22, 1983, in the name of Don M. Johnson, d/b/a Transylvania Flying Service, Inc. The written reasons for judgment of the trial court of January 30, 1984, was captioned "Don Johnson d/b/a Transylvania Flying Service, Inc. v. ...." [Footnotes omitted.]
After the lodging of an appeal to this court of the trial court judgment rendered January 30, 1984, but prior to the time a decision was handed down in the matter, additional proceedings were brought against Mr. Johnson. On November 30, 1984, a hearing was conducted by the ACP *545 charging Mr. Johnson with the following violations:
1. You operated a business in Louisiana engaged in the application of pesticides for a fee without a valid owner-operator license during 1984 in violation of R.S. 3:3243(A).
2. You made an application of Topsin M inconsistent with its labeling in that the spraying of [D]eputy [S]heriff Ron Dingler and Inspector Bill Seese with Topsin M violated the label in that the label warns of hazards to humans and domestic animals if it is swallowed, inhaled or absorbed through the skin and warns to avoid contact with eyes, skin or clothing, to avoid breathing of dust or mist. This is a violation of R.S. 3:3252(A)(2).
3. You made an application of a pesticide in a faulty, careless and negligent manner by spraying Deputy Sheriff Ron Dingler and Inspector Bill Seese with Topsin M on July 31, 1984 in violation of R.S. 3:3252(A)(4).
4. After notice, you refused to comply with the provisions of the Louisiana Pesticide Law by continuing to operate a business engaged in the application of pesticides for a fee without a license after the July 11, 1984 notification that you did not have a valid owner-operator license and after a temporary restraining order prohibiting you from operating as an owner-operator was served on you on July 27, 1984. This is a violation of R.S. 3:3252(A)(5).
5. You interfered with a representative of the Commissioner in the performance of their [sic] duties, namely you assaulted Bill Seese while he was serving a subpoena on October 15, 1984 and this is a violation of R.S. 3:3252(A)(15).
The ACP made the following factual determinations:
On April 17, 1984 all appeal delays lapsed and the decision of Judge Frank Foil became final as to Transylvania Flying Service, Inc.
Between April 17, 1984 and July 11, 1984, particularly in June of 1984, Donald Mack Johnson made aerial applications of pesticides for a fee on behalf of himself and Transylvania Flying Service, Inc.
On July 11, 1984 the Department notified Donald M. Johnson, by letter, that his commercial applicator's certification was not attached to any valid owner-operator's license. The letter also notified Mr. Johnson that he was prohibited from making aerial applications of pesticides until a valid owner-operator's license was obtained from the Department.
On July 14 and 18 of 1984, Donald M. Johnson made aerial applications of pesticides for a fee.
On July 26, 1984 the Commissioner filed suit in East Carroll Parish to enjoin Donald M. Johnson and Transylvania Flying Service, Inc., from making aerial applications of pesticides. This suit was entitled Commissioner of Agriculture et al. v. Transylvania Flying Service et al., 6th Judicial District Court, No. 14,217.
The Commissioner, in that suit, obtained a temporary order prohibiting either Donald M. Johnson or Transylvania Flying Service, Inc., from making aerial applications of pesticides. This temporary restraining order was served on Donald M. Johnson on July 27, 1984.
On July 31, 1984 Donald M. Johnson, while making an aerial application of the pesticide, Topsin-M, willfully, wantonly and maliciously sprayed Department of Agriculture [I]nspector Bill Seese, and East Carroll Parish Deputy, Ronald Dingler, with the Pesticide Topsin-M.
On August 3, 1984 a Judgment was stipulated to by all parties in the suit entitled Commissioner of Agriculture et al. v. Transylvania Flying Service Inc. et al., 6th J.D.C., No. 14,217. That judgment allowed Donald M. Johnson to transfer his commercial applicator's certificate to Johnson Flying Service which held a valid owner-operator's license. An application for a valid owner-operator's license was to be submitted to the Commissioner by either Donald M. Johnson or Transylvania Flying Service, Inc.

*546 On October 15, 1984 Donald M. Johnson did willfully, and without provocation, attack Department of Agriculture Inspector, Bill Seese, by hitting him in the jaw. At the time of the attack, Mr. Seese was attempting to serve a subpoena issued by this Commission on Mr. Johnson. Mr. Seese had been ordered to serve the subpoena by his immediate superior.
On November 8, 1984 Donald M. Johnson pled guilty to the charge of simple battery brought as a result of the attack on Mr. Seese. The guilty plea was made in the case entitled, State of Louisiana v. Donald M. Johnson, Sixth J.D.C., No. 30,638.
Based on its findings, the ACP recommended to the Commissioner that Mr. Johnson be found guilty on all five counts and that he be fined $5,000.00 for each offense. The ACP further recommended that $12,500.00 of the total fine be suspended for one year and then forgiven on the condition that Mr. Johnson not be found guilty of any further violations during that time. The Commissioner did find Mr. Johnson guilty on all five counts and imposed a $5,000.00 fine for each violation, for a total fine of $25,000.00. However, Mr. Odom did not suspend any of that amount and further revoked the commercial applicator's certification of Mr. Johnson.
On review by the Nineteenth Judicial District Court, the rulings made by Commissioner of Agriculture Bob Odom were affirmed.

STANDARD OF REVIEW
On appeal to this court, plaintiff/appellant, Donald M. Johnson, assigns as error the failure of the Nineteenth Judicial District Court to accord him appropriate judicial review of the administrative decision rendered by the Commissioner of Agriculture. Mr. Johnson argues that the administrative decision of the Commissioner finding violations of the Louisiana Pesticide Law, revoking his commercial applicator's certification, and imposing $25,000.00 in fines should have been reversed.
La.R.S. 49:964(G) directs the scope of review of administrative decisions by the court:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Although prejudice to substantial rights of the appellant is necessary for the court to reverse or modify an administrative decision, in addition to the presence of one of the six enumerated grounds, we do not need evidence to know that substantial rights are involved in the case. Insurance Services Office v. Commissioner of Insurance, 381 So.2d 515 (La.App. 1st Cir.), writ denied, 382 So.2d 1391 (La.1979). The six grounds for reversal or modification of an administrative action are separated in the statute by the disjunctive conjunction "or"; therefore, any one of the grounds is a sufficient basis for judicial action. Mayor and Council of Morgan City v. Ascension Parish Police Jury, 468 So.2d 1291 (La. App. 1st Cir.1985). The manifest error test of La.R.S. 49:964(G)(6) is used in reviewing the facts as found by the agency, as opposed to the arbitrariness test used in reviewing conclusions and exercises of agency *547 discretion. Save Ourselves, Inc. v. The Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
OPERATION OF A BUSINESS ENGAGED IN THE APPLICATION OF PESTICIDES WITHOUT A VALID OWNER-OPERATOR LICENSE
The Commissioner found that Mr. Johnson was hired to and in fact did apply pesticides on occasions from April 17, 1984 through July 11, 1984 although the license of TFS had expired in 1983. The Commissioner also found that after notice was given to Mr. Johnson that TFS no longer possessed a valid owner-operator license, Mr. Johnson continued to operate his business. Specifically, the Commissioner found that Mr. Johnson made applications of pesticides on July 14, 1984 and July 18, 1984. Mr. Johnson contends that the penalty imposed by the Commissioner against TFS on August 19, 1983 was appealed and did not become effective, thus, the previously held license was valid during the pertinent time periods.
La.R.S. 3:3242, in pertinent part, provides that "[n]o person shall apply or supervise the application of any restricted use pesticide as a commercial applicator unless that person has the proper certification." La.R. S. 3:3243, in pertinent part, provides that "[n]o person shall own or operate a business engaged in the application of pesticides for a fee unless that person has the proper license." The ACP, by rule, requires that a person applying pesticides as a commercial applicator be licensed, employed by a person licensed, making ground applications under the direct supervision of a person certified as a commercial applicator, or certified in demonstration and research. La.Admin.Code 7:13137(A) (1985).
Prior to the time the proceedings were brought by the Department of Agriculture, Mr. Johnson operated his business by obtaining a license to apply pesticides for his corporation, TFS, and obtaining a commercial applicator certification for himself, individually. Thus, as an employee of a corporation licensed to apply pesticides, Mr. Johnson could legally engage in crop dusting. TFS did hold a license issued by the Department of Agriculture entitling it to engage in the business of application of pesticides; however, by its terms, that license expired on April 30, 1983. By letter dated August 19, 1983, the Commissioner notified Charles Braken, then the registered agent for TFS, that TFS's application for reissuance of its license would be denied for a one-year period.
La.R.S. 49:961(B) provides:
When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.
Therefore, the existing license of TFS continued in effect until the last day for seeking review of the denial of reissuance, September 19, 1983.[2] No later date was fixed by the Nineteenth Judicial District Court, the reviewing court.
Although the Commissioner in his August 19, 1983 letter stated that the one-year period during which TFS would be denied a license would begin "on the first day following final resolution of any appeal which may be taken ...," the defendants contend that no appeal was taken by TFS from the August 19, 1983 ruling. The ACP concluded, following the November 30, 1984 hearing, that the Petition to Intervene filed by TFS on September 19, 1983 in the suit filed by Donald Johnson to appeal other decisions of the Commissioner, was not effective as an appeal of that suspension. However, that issue was previously decided by this court.
*548 In Johnson v. Odom, 470 So.2d at 991, we held:
In any event an appeal from an adverse ruling of the Commissioner is taken by timely filing a petition in the "district court of the parish in which the agency is located." La.R.S. 49:964(B). We will consider the intervention as a petition for appeal by TFS from the July 13, hearing and August 19, ruling of the Commissioner, even though it might not be properly allowable as an intervention.
That portion of the decision of the Commissioner regarding TFS was reversed and we remanded to the Commissioner so that a proper record for judicial review might be prepared and with orders to impose either a fine or suspension, but not both as had previously been done. In Johnson, we considered the pleadings filed sufficient to accomplish an appeal on behalf of TFS, even though there may have been technical deficiencies present.
Notwithstanding the status of the TFS appeal, the reissuance of the TFS license was denied. Even though the Commissioner indicated that the license would not be denied pending appeal, it was denied.[3] Since La.R.S. 49:961(B) provides for the extension of an expired license only in limited circumstances not present in this case, the unfulfilled assurance of the Commissioner cannot serve to extend an otherwise expired license.[4] Consequently, the operation by TFS of the business of application of pesticides in 1984 was without a license and in violation of La.R.S. 3:3243.[5]
Mr. Johnson argues that charges numbered 1 and 4, herein, both seek to punish the same conduct. However, La.R. S. 3:3252(B) provides that each day on which a violation occurs shall be considered a separate offense. Charge 1 is directed toward the activities occurring between April 17, 1984 and July 11, 1984, while charge 4 is directed toward the activities occurring on July 14, 1984 and July 18, 1984.[6] Accordingly, the finding of guilt as to charges 1 and 4 is affirmed.
The Commissioner imposed a $5,000.00 fine for each of these violations. Under the circumstances presented in the present case, the decision of the Commissioner to impose the maximum fine for each of these offenses is a clearly unwarranted exercise of discretion. Mr. H.F. "Butch" Calhoun, the custodian of records of the Department of Agriculture, stated at the ACP hearing that the reason the TFS license was denied was because the Department was uncertain of the status of the litigation in the Nineteenth Judicial District Court concerning TFS; the Department concluded that TFS had not appealed. Considering our holding in the Johnson case, TFS may have been entitled to have its license reissued by the terms of the Commissioner's own decision of August 19, 1983. Thus, a maximum fine was unwarranted in light of the Department's mistaken legal conclusion which formed the basis for the denial. At the same time, the action of Mr. Johnson in ignoring the requirement for possession of a valid owner-operator *549 license cannot be condoned. Consequently, we find that a penalty of $500.00 for each of these offenses is the maximum amount that can be imposed.

APPLICATION OF TOPSIN-M INCONSISTENT WITH ITS LABELING
The ACP made a factual determination based on the evidence presented to it that Mr. Johnson "willfully, wantonly and maliciously" sprayed the pesticide Topsin-M on Mr. Dingler and Mr. Seese as they photographed his crop dusting activities from a nearby access road. The Commissioner found that this activity constituted application of a pesticide inconsistent with its labeling in violation of La.R.S. 3:3252(A)(2). The label of Topsin-M is reproduced in Appendix "A", following this opinion.
Both Mr. Dingler and Mr. Seese testified at the hearing that they were clearly visible on the roadway and that Mr. Johnson continued to spray the pesticide as he passed over them without taking any evasive action. Mr. Dingler further testified that they observed for some time the flight pattern used by Mr. Johnson while spraying the field and that Mr. Johnson deviated from that path and flew directly over them as he sprayed. Mr. Seese was unable to say whether or not Mr. Johnson deviated from his normal flight pattern, but he stated that he observed Mr. Johnson moving in a northerly direction flying from east to west, alternatively, until he suddenly swung to the south and sprayed directly over their position. Based on this evidence, we are unable to say that the factual findings of the Commissioner were manifestly erroneous.[7]
Mr. Johnson argues that the finding of guilt as to this charge is erroneous because the Department of Agriculture did not introduce any evidence to show that the concentration of the Topsin-M was not applied at a amount less than that specified on the label. La.R.S. 3:3254 provides an exemption to the prohibition against application of a pesticide inconsistent with its labeling where the application is at any dosage, concentration, or frequency less than that specified on the labeling. However, this argument constitutes an affirmative defense that the party claiming it has the burden of proving. See Martin v. Calloway, 303 So.2d 525 (La.App. 1st Cir. 1974). No evidence was offered by Mr. Johnson in this regard; therefore, this argument is without merit.
Mr. Johnson further claims that the application of the pesticide on Mr. Dingler and Mr. Seese resulted solely through their own fault in positioning themselves on the roadway near a spraying operation in order to obtain photographs of the crop dusting activities. This argument is also without merit. As found by the Commissioner, the action of Mr. Johnson in spraying these men was deliberate, and regardless of how the men came to be in that location, the activity of Mr. Johnson was clearly prohibited by the Louisiana Pesticide Law.
Therefore, the finding of guilt as to charge number 2, herein, is affirmed. Likewise, the penalty imposed therefor is affirmed as we are unable to say that the imposition of a maximum penalty for deliberately spraying a substance known to be harmful to humans on humans is unwarranted.

APPLICATION OF A PESTICIDE IN A FAULTY, CARELESS AND NEGLIGENT MANNER
The Commissioner found Mr. Johnson guilty of violating both La.R.S. 3:3252(A)(2) and La.R.S. 3:3252(A)(4), for the same activity, namely, spraying Mr. Dingler and Mr. Seese with Topsin-M.[8] *550 La.R.S. 3:3252(B) provides, in part, that "[t]he Commissioner may assess a civil penalty of not more than five thousand dollars for each violation of any of the prohibitions in Subsection A of this Section. Each day on which a violation occurs shall be considered a separate offense."
We find that the Legislature in enacting these provisions intended that a person be penalized a maximum of $5,000.00 for each offense, and where an activity is prohibited by more than one subsection of La.R.S. 3:3252(A), the Department of Agriculture should proceed under only one subsection. It is patently unfair for the Department to circumvent the maximum penalty provision by bringing multiple charges for the same offense. Accordingly, the finding of guilt as to charge number 3 is reversed.
INTERFERENCE WITH A REPRESENTATIVE OF THE COMMISSIONER IN THE PERFORMANCE OF HIS DUTIES
It was not disputed that on October 15, 1984, Mr. Johnson committed battery on Bill Seese, an Agricultural and Environmental Specialist for the Department of Agriculture, while Mr. Seese was attempting to serve a subpoena issued by the Department on Mr. Johnson.[9] Defendants contend that since Mr. Seese was serving a subpoena on behalf of the Department of Agriculture, the action of Mr. Johnson amounted to interference with a representative of the Commissioner in the performance of his duties, in violation of La.R.S. 3:3252(A)(15). Mr. Johnson contends that the Commissioner does not have the power to serve subpoenas, and as a result, Mr. Seese was not acting in the performance of his duties.
La.Code Civ.P. art. 1291 provides that "[e]xcept as otherwise provided by law, service shall be made by the sheriff of the parish where service is to be made or of the parish where the action is pending." Despite the fact that the Commissioner has the power to issue subpoenas, we know of no authority and none has been cited to us that would allow the Commissioner or his representatives to serve subpoenas.[10] In fact, La.R.S. 3:3204(C)(2) now declares that "[t]he sheriff of the parish in which the witness or the documents or records are located shall serve the subpoenas."[11]
At the time the battery in question took place, October 15, 1984, there was no provision in the Louisiana Pesticide Law addressing the issue of service of subpoenas. Had the Legislature intended to give *551 the Commissioner the power to serve supboenas, we believe that it would have done so. In La.R.S. 30:1073(I), the Legislature demonstrated that the power to serve subpoenas is one which is specifically given to an agency, as was done therein with respect to the Department of Environmental Quality:
Subpoenas authorized under R.S. 30:1061(D) and 1063 may be served by an employee of the department, by the sheriff of the parish where the witness resides or where he may be found, or by any other officer authorized by law to make service of process.
The subsequent enactment of La.R.S. 3:3204(C)(2) merely codifies the principle that was implicit before. Thus, Mr. Seese was not acting within the scope of his duties as an employee of the Department of Agriculture when he attempted to serve a subpoena on Mr. Johnson. Accordingly, the finding of guilt as to charge number 5, is reversed.

REVOCATION OF COMMERCIAL APPLICATOR'S CERTIFICATION
La.R.S. 3:3252(C) provides as follows:
"The Commissioner may suspend or revoke any license or certificate issued under the authority of this Part, or impose probation on any person who holds a license or certificate, for any violation of any of the prohibitions in Subsection A of this Section."
Since Mr. Johnson has been found guilty of several violations, the revocation of his commercial applicator certification was well within the discretion of the Commissioner. Therefore, the revocation is affirmed.
For the reasons assigned, the judgment of the trial court is reversed in part and affirmed in part, all costs of this appeal are to be borne by plaintiff/appellant, herein.
REVERSED IN PART; AFFIRMED IN PART. *552 
NOTES
[1] The Louisiana Pesticide Law was enacted to provide rules and regulations in the area of the use of pesticides. The Commissioner of Agriculture (Commissioner) is charged with the administration and enforcement of the provisions of the Louisiana Pesticide Law. La.R.S. 3:3203. The Louisiana Advisory Commission of Pesticides (ACP) is a sub-division of the Department of Agriculture whose powers include holding hearings and conducting investigations, advising the Commissioner in various areas, and recommending to the Commissioner civil penalties and other actions relative to licensing and certification. La.R.S. 3:3213. In the present case, the ACP held a hearing on November 30, 1984. Written findings of fact and recommendations to the Commissioner for penalties against Mr. Johnson were made by the ACP on February 5, 1985. By letter to Mr. Johnson dated April 11, 1985, the Commissioner adopted the factual findings of the ACP and imposed penalties thereon.
[2] La.R.S. 49:964(B) gives the party desiring to appeal an agency's final order thirty days from the mailing of notice of the final decision of the agency to file a petition for review in the district court of the parish in which the agency is located.
[3] Mr. Johnson failed to seek injunctive or any other appropriate relief in order to compel the Department of Agriculture to reissue the TFS license during the time the August 19, 1983 ruling was under appeal; even though, his attempts after August 19, 1983 to have the license reissued by the Department itself, indicate his awareness that reissuance was a necessary prerequisite to the operation of his business.
[4] Plaintiff argues that defendants conceded that an appeal filed by TFS from the 1983 ruling would have allowed its license to remain in effect. While it is true that the attorney for defendants, at the November 30, 1984 hearing, answered affirmatively when the hearing officer made the following remark, "[s]o as I understand it, if there had been an appeal filed, then the license would have continued into effect the same if they (sic) had been reissued." Regardless of whether such a response constitutes a concession, the resolution of this issue is a question of law for the court to decide.
[5] There was no factual dispute over the actual occurrence of Mr. Johnson's crop dusting activities in 1984. The uncontradicted testimony and records of John L. Holt, Joe Brock, and Tom Shields for whom these services were performed, was introduced as evidence.
[6] We note that each day on which Mr. Johnson applied pesticides during this time could have been the basis for a separate charge, rather than having been grouped together under two charges, as was done herein.
[7] When Mr. Johnson was called to the stand, he pled the Fifth Amendment, claiming that any testimony he would give might incriminate him. The hearing officer overruled his claim, stating that as the proceedings were civil and not criminal in nature, the Fifth Amendment was not applicable. Nevertheless, Mr. Johnson refused to answer any questions. Although we are not called upon to decide the propriety of the hearing officer's ruling, we merely note that no testimony was given by Mr. Johnson concerning the events in question.
[8] La.R.S. 3:3252, in part, provides:

A. Violations of this Part shall include but shall not be limited to the following:
. . . .
(2) Making a pesticide recommendation or application inconsistent with the labeling or in violation of the E.P.A. or state restrictions on the use of that pesticide.
. . . .
(4) Operating in a faulty, careless, or negligent manner.
. . . .
[9] In the ACP written recommendations, it was noted that Mr. Johnson pled guilty to the charge of simple battery in criminal proceedings arising from this incident, brought in the Sixth Judicial District Court.
[10] See La.R.S. 3:3204(C)(1) [formerly designated as La.R.S. 3:3214(3) ].
[11] This provision was enacted by La.Acts 1985, No. 637, § 1. Prior to that revision, La.R.S. 3:3204 read as follows:

A. When the commissioner believes that a violation of the provisions of this Chapter or of the rules and regulations adopted under the provisions of this Chapter has occurred, the commissioner may apply to the district court for the district in which the alleged violation occurred for a warrant to search the premises in which the alleged violation occurred and to obtain, at no cost to the state, samples of any pesticides or other materials involved in the alleged violation.
B. The commissioner shall have access to any premises where there is reason to believe that pesticides are sold, offered for sale, or held for distribution or application. The commissioner may examine any pesticide and may open any package and take a sample for analysis, at no cost to the state. Samples shall be taken in accordance with procedures established by the commissioner and shall be submitted to the state chemist for analysis. On completion of the analysis, the report shall be submitted to the manufacturer and the purchaser. If either person questions the validity of the analysis, that person may request in writing that another analysis be performed by a chemist approved by the commissioner. The person requesting the second analysis shall pay the costs of the second analysis.