United States Court of Appeals,

Fifth Circuit.

No. 92-2762.

Benton MUSSLEWHITE, and all others similarly situated, Plaintiff-
Appellant,

v.

The STATE BAR OF TEXAS, et al., Defendants-Appellees.

July 19, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

This case presents a question of subject matter jurisdiction.
The district court held that it was without jurisdiction to proceed
on the appellant's claims. We uphold that determination with one
exception. Accordingly, we affirm in part and reverse and remand
in part.

I.

We limit our discussion of the facts to those bearing on the
issue of jurisdiction. The plaintiff/appellant, Benton
Musslewhite, is a Houston attorney who made a name for himself
representing plaintiffs in complex personal injury cases, usually
involving mass disasters. In 1987, he attracted the attention of
the State Bar of Texas ("State Bar") as the result of his public
statements soliciting clients. Typically, it seems, Musslewhite
held "press conferences" during which he would announce his plan of
action in response to a particular tort and detail his

1

qualifications. Not incidentally, he rarely failed to include information on how potential clients could reach him if interested in his services.

The State Bar expressed concern—Musslewhite charges that this concern was feigned—that these press conferences constituted the improper solicitation of clients. The State Bar launched an investigation that focussed in large part on whether Musslewhite was violating the mandates of professional responsibility.[1] Musslewhite perceived the investigation as a direct assault on his First Amendment right to free speech.

Eventually, the State Bar filed formal charges against Musslewhite. The two parties reached a settlement, however, and a trial was unnecessary. Under the terms of the settlement, Musslewhite was suspended from the practice of law for ninety days beginning November 1, 1988, and placed on probation for three years after that. Moreover, he was barred from accepting new employment until November 1, 1988 (the date his suspension was to begin). As to this final limitation, however, Musslewhite still was entitled to refer potential clients to other attorneys. The penalty for violation of any of these terms was an automatic three year suspension.

The issue presented in this case stems from an alleged breach of these settlement provisions. On the heels of an oil platform explosion in Scotland, Musslewhite went to work, plotting his

---

[1]Musslewhite charges that the investigation was designed only to harass plaintiffs' attorneys and solo practitioners.

strategy for cashing in on the disaster.[2]  He held his typical press conferences and issued his self-laudatory press releases.

The State Bar concluded that his tactics violated the terms of the settlement agreement and sued to revoke his probation.[3] Pursuant to the settlement terms, Musslewhite was suspended from the practice of law for three years beginning January 31, 1989. That judgment was affirmed on appeal.[4]  Neither the Texas Supreme Court nor the U.S. Supreme Court found persuasive reasons to reexamine the matter.

Having reached a dead end, Musslewhite filed the present suit—an action under 42 U.S.C. § 1983—in federal court against the State Bar, its Executive Director, its General Counsel, its former General Counsel, an attorney employed by the State Bar, and the

---

[2]On July 6, 1988, the Piper Alpha oil platform in the North Sea exploded.  Musslewhite flew to Scotland shortly thereafter to discuss a possible lawsuit over the incident in the state courts of Texas.  He was in touch with John O'Quinn, another attorney whom the State Bar had investigated, about referring any cases he obtained in Scotland to O'Quinn.

[3]The State Bar considered Musslewhite's press release misleading.  For one, the press release failed to disclose Musslewhite's legal handicap which prohibited him from accepting new clients.  The State Bar also objected to a letter written by Musslewhite associate Kelly Newman addressed to "all victims or families of victims".  The letter extolled the virtues of Musslewhite's group which boasted "internationally renowned trial lawyers in the United States".  We underscore that, in this case, we are not testing the validity of these justifications for the State Bar's actions.

[4]*Musslewhite v. State Bar of Tex.,* 786 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1990, writ denied), *cert. denied,* 501 U.S. ----, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991).

3

members of the State Bar's Board of Directors.[5]  In his complaint, he alleged first, that several of the procedures used in his disciplinary proceeding were unconstitutional and, second, that some of the State Bar's rules themselves are unconstitutional.  He sought declaratory and injunctive relief, and compensatory and punitive damages.  He feels strongly that he is a victim of the State Bar's desire to persecute him, allegedly in retaliation for his willingness to use the right of free speech to enhance his professional stature.

## II.

The district court dismissed Musslewhite's suit for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  We address whether the district court erred in so doing.  After a *de novo* review,[6] we uphold the district court's dismissal of the appellant's challenges to a series of Texas State Bar practices as applied to him.  We hold, however,

---

[5]In his original complaint, Musslewhite named Karen R. Johnson, Executive Director of the State Bar (sued in her official capacity);  James M. McCormack, general Counsel of the State Bar (official capacity);  Steven Peterson, then general counsel to the State Bar (individual and official capacities);  Steven Smoot, then an attorney employed by the State Bar (individual and official capacities);  and the Board of Directors (all sued in their official capacities):  Charles R. Dunn, Harriet Rivers, James N. Parsons, Tom Cunningham, Richard C. Hile, Antonio Alvarado, Charles A. Beckham, Martha S. Dickie, M. Colleen McHugh, Steven L. Martin, Charles O'Reilly, Spencer C. Relyea, Jerry Secrest, and Kirk Watson.

We refer to the defendants collectively as the "State Bar".  We note, however, that the State Bar of Texas is a distinct entity that Musslewhite named as a defendant in his prayer for a declaratory judgment.

[6]*In re Bradley,* 989 F.2d 802, 804 (5th Cir.1993).

4

that Musslewhite has stated a claim upon which relief could be granted as to his allegations of bad faith and harassment. The district court did have jurisdiction over that claim and should have proceeded on that basis.

An explication of the way in which Rules 12(b)(1) and 12(b)(6) intersect in this case may be helpful. Rule 12(b)(1) requires a threshold determination of whether subject matter jurisdiction exists. Sometimes this depends on whether the plaintiff has stated a particular type of federal claim. To make that determination, we look to Rule 12(b)(6) which, as is widely understood, deals with dismissal for failure to state a claim upon which relief can be granted. With that exception this case turns solely on Rule 12(b)(1).

### III.

We start with two decisions that inform our analysis: the U.S. Supreme Court's decision in *District of Columbia Court of Appeals v. Feldman*[7] and this Court's decision in *Howell v. State Bar of Texas*[8]. Because they control most of the issues, we discuss them in some detail.

The *Feldman* case involved an apparently qualified applicant to the District of Columbia bar who, in spite of his qualifications, had not graduated from an accredited law school. The bar refused him admission, citing the rule requiring a completed legal

---

[7] 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

[8] 710 F.2d 1075 (5th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984) ("*Howell II* ").

5

education from an accredited law school.  Feldman responded with a petition to the D.C. Court of Appeals for a waiver of the graduation requirement.  That petition was denied.

Feldman sought relief in federal district court.  The court never reached the merits of Feldman's contentions, however, because it held that the federal courts were without the predicate subject matter jurisdiction.  The court reasoned that the D.C. Court of Appeals's refusal to grant Feldman a waiver was a decision by a body tantamount to a state's highest tribunal.  The federal courts may not properly sit in review of such decisions.

Feldman appealed.  The Court of Appeals for the D.C. Circuit disagreed with the district court and, instead, concluded that the bar criteria proceedings in the D.C. Court of Appeals were administrative and not judicial.  This distinction, as we explain below, allowed the federal district court to proceed.  Accordingly, the court reversed and remanded the case.  Before it went back to the district court, the U.S. Supreme Court granted certiorari.

The Supreme Court held that the district court had it right the first time.  First, the Court settled the nature of the bar disciplinary proceedings as judicial, not merely administrative. The Court reasoned that the purpose of the proceedings was to "investigate, declare, and enforce liabilities as they [stood] on present or past facts and under laws supposed already to exist".[9] That, the Court concluded, is a judicial charge.

_____

[9]*Feldman,* 460 U.S. at 479, 103 S.Ct. at 1313 (internal quotations omitted).

6

The Court then turned its attention to the question of the district court's jurisdiction to entertain Feldman's challenges. The Court drew a significant distinction between Feldman's broad-based challenges to the constitutionality of the bar's rules and his challenges to the constitutionality of his individual disciplinary proceedings. This distinction reflects the rule embodied in 28 U.S.C. § 1257: Only the Supreme Court of the United States may review final judgments or decrees rendered by the highest court in a state.

The *Feldman* rule, then, is as follows. The federal courts *do* have subject matter jurisdiction over

> *general challenges to state bar rules,* promulgated by state courts in non-judicial proceedings, which do not require review of a final state-court judgment in a particular case.[10]

These we refer to as "general constitutional attacks". The federal courts *do not* have subject matter jurisdiction over

> challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.[11]

We applied the *Feldman* rule in the Fifth Circuit for the first time in *Howell v. State Bar of Texas.* In that case, Howell, a Texas attorney, had filed suit in federal district court to enjoin his disbarment.[12] The district court had held that it lacked

_____

[10]*Id.* at 486, 103 S.Ct. at 1317 (emphasis added).

[11]*Id.*

[12]In a factual distinction to the case we decide today, Howell sought the injunction first while the State proceedings were pending and again before his state court appeal had been heard. Eventually, the Texas courts finalized their judgment against Howell. At that point, he sought to enjoin the

7

jurisdiction. We reversed in *Howell I* on grounds irrelevant to this matter and remanded. In the interim, the Supreme Court decided *Feldman* and, subsequently, vacated our decision in *Howell I* and remanded the case back to us. We then applied the *Feldman* rule for the first time. Although we held that dismissal was proper as to the bulk of Howell's claims, we reversed as to Howell's due process, equal protection, and privileges and immunities claims.[13]

We also fleshed out some of the rules announced in *Feldman.* For one, the *Feldman* distinction meant that a general constitutional attack that is nonetheless "inextricably intertwined" with a state court judgment of reprimand cannot be properly heard in federal court.[14] Second, we noted that federal jurisdiction does not lie for claims that were not presented first to the state court in the disciplinary proceeding.[15]

Our task, then, is focussed: Are any of Musslewhite's claims properly construed as general constitutional attacks on the Texas State Bar's disciplinary scheme. The district court concluded that

---

enforcement of his disbarment. *Howell v. State Bar of Texas,* 674 F.2d 1027 (5th Cir.1982) (before remand) ("*Howell I* ").

[13]*Howell II,* 710 F.2d at 1076.

[14]*Id.* at 1077.

[15]*Id.* at 1076; *Thomas v. Kadish,* 748 F.2d 276, 277-78 (5th Cir.1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985). *Feldman* overruled the "*Dasher* exception" previously embodied in *Dasher v. Supreme Court of Texas,* 658 F.2d 1045 (5th Cir.1981). After *Feldman,* the federal courts are without jurisdiction over a plaintiff's claims that could have been raised, but were not.

all of Musslewhite's claims were challenges to the constitutionality of the State Bar's practices as applied to him in his disciplinary proceedings. Although the court's reasoning was sound, we disagree as to the proper classification of one claim in particular.

IV.

We turn to the specific claims that Musslewhite raises. He complains that:

(1) The state judge erred in denying Musslewhite's motion for a change of venue;

(2) The state trial denied Musslewhite's right to trial by jury;

(3) The Texas Court of Appeals, Texas Supreme Court, and U.S. Supreme Court all erred in refusing to expedite Musslewhite's appeal of the disciplinary proceeding;

(4) The State Bar's rule governing the making of false and misleading statements is unconstitutional *as applied* in Musslewhite's case;

(5) "[S]everal constitutional travesties ... occurred in the state court action";

(6) The suspension imposed in the state trial constituted a violation of Musslewhite's First Amendment rights;

(7) The punishment imposed in the state trial was excessive;

(8) Musslewhite's state trial was tainted by prejudicial publicity;

(9) Musslewhite received inadequate notice of the state trial;

(10) The court refused to suspend Musslewhite's judgment upon his filing a supersedeas bond while appealing.

We will not belabor our conclusions with a claim-by-claim analysis. All of these contentions have in common their grounding in some aspect of the disciplinary proceedings against Musslewhite. It is plain by the way they are stated that they attack aspects of

9

his particular trial. We have stated that "the Texas scheme for disciplining attorneys is fully capable of considering the constitutional arguments of attorney-defendants relating to specific procedures followed in their cases."[16] To evaluate them would require review of the state court judgment. That, as *Feldman* instructed, we are without the jurisdiction to do.

## V.

Musslewhite couched some of his averments in the language of a general constitutional attack on the State Bar's scheme of disciplining attorneys. Merely using catch phrases, however, will not vest the federal district court with the jurisdictional authority to entertain the action. This is about substance, not form. Instead, we must ascertain what the court really is being asked to review.

First Musslewhite complains that the State Bar violated the constitutional guarantee of equal protection by selectively investigating himself and others similarly situated. We have no trouble classifying this contention as but another attack on the State Bar's procedures as applied to Musslewhite. All of the evidence to which Musslewhite alludes goes solely to his disciplinary proceeding. That is, the procedures, he charges, were used in this case to deprive him of his equal protection rights. This conclusion applies as well to his charge that the State Bar prosecutes solo practitioners for conduct that it tolerates by

---

[16]*Bishop v. State Bar of Texas,* 736 F.2d 292, 294 (5th Cir.1984).

10

large firms.  The state court was capable of resolving that claim; it too is inextricably intertwined with the state case.

Musslewhite also argues that the State Bar rule governing the making of false and misleading statements is, *on its face,* unconstitutionally vague and violates the First Amendment.  The Texas Court of Appeals flatly rejected this contention that the rule was unconstitutionally vague either on its face or as applied in Musslewhite's case.[17]  The district court's judgment that it was incapable of revisiting that sound judicial decision was correct.

VI.

We turn now to the one claim for which the district court was properly vested with jurisdiction.  Musslewhite contends that the State Bar's disciplinary proceedings against him were taken in bad faith in violation of his due process rights.  In *Bishop v. State Bar of Texas*[18], we stated that

> Although Texas disciplinary proceedings are capable of deciding constitutional challenges to specific procedures, *recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves.*

The doctrinal underpinnings of this "bad faith exception" are rooted in the sister exception to the *Younger* doctrine.  In *Younger v. Harris*[19], the Supreme Court established a policy whereby federal intervention in ongoing state criminal proceedings is barred absent extraordinary circumstances.  Subsequent decisions teach us that a

---

[17]*Musslewhite,* 786 S.W.2d at 441-42.

[18]736 F.2d at 292 (emphasis added).

[19]401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

11

state prosecution taken in bad faith or for the purposes of harassment constitutes such extraordinary circumstances and federal intervention is justified.[20]  This bad faith exception to the *Younger* doctrine has two recognized applications in our Circuit: First, where the state prosecution is taken for the purpose of deterring constitutionally protected conduct[21] and, second, where the prosecution is motivated by a design to harass the defendant.[22]

The *Younger* doctrine does not apply to the present matter, for the state proceeding here in question is neither criminal nor ongoing and, thus, no question of *intervention* is presented.  We nonetheless have previously borrowed *Younger's* framework in clarifying when federal courts may or may not become involved in state court decisionmaking.[23]

---

[20]*See Trainor v. Hernandez,* 431 U.S. 434, 446, 97 S.Ct. 1911, 1919, 52 L.Ed.2d 486 (1977);  *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611-12, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 (1975).

[21]*See Smith v. Hightower,* 693 F.2d 359 (5th Cir.1982).

[22]*See Shaw v. Garrison,* 467 F.2d 113, 119-21 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972), *aff'g,* 328 F.Supp. 390, 393-400 (1971).  In *Shaw,* we detailed then District Attorney Jim Garrison's harassing prosecution of Clay Shaw and the bad faith tactics Garrison employed in his zealous investigation of the assassination of President John F. Kennedy.  *Shaw* represents perhaps the paradigm in this Circuit of impermissible prosecutorial motives.  Garrison used his prosecution of Shaw as a means of procuring public support—financial and otherwise—of his larger investigation into the assassination of the President.  *See Shaw v. Garrison,* 328 F.Supp. at 393-400.

[23]*See, e.g., Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (borrowing *Younger* principles for civil proceedings in which important state interests are involved); *Henry v. First National Bank of Clarksdale,* 595 F.2d 291, 301 (5th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

The bad faith exception applies here. Musslewhite has alleged that the state's judicial machinery was appropriated in an effort to persecute him. Implicit in these allegations is that both the decision and the mechanism itself are not trustworthy. The federal courts must have subject matter jurisdiction if a claim of bad faith and harassment is ever to be proved, for the claim is levied against the proceedings themselves.

VII.

The next step, after having decided that an allegation of bad faith or harassment is a proper means of invoking federal jurisdiction, is to determine whether Musslewhite has properly stated this claim for the purposes of Rule 12(b)(6). Dismissal under Rule 12(b)(6) is not appropriate "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief".[24] That familiar statement illustrates that the federal courts are properly reticent to dismiss cases for failure to state a claim. Other mechanisms such as summary judgment (Rule 56) and a motion for a more definite statement (Rule 12(e)) are the proper vehicles for narrowing the issues and illustrating the boundaries of a claim.[25] Hence, dismissal is not proper merely because the plaintiff has failed to set out in detail the facts upon which he bases his claim.

Applying these procedural definitions to the present context,

_____

[24]*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

[25]*Williams v. United Credit Plan of Chalmette, Inc.,* 526 F.2d 713, 714 (5th Cir.1976).

13

we conclude that Musslewhite has stated a claim that the proceedings against him were taken in bad faith and motivated by harassment. Comparing the present matter with the *Bishop* case supports our conclusion. In *Bishop,* we were satisfied that the admittedly thin record brought the case within the ambit of the liberal Rule 12 standard. Yet, the plaintiff in *Bishop* had alleged merely that the State Bar's efforts to discipline him spanned a number of years and were taken "in bad faith and for an improper motive".[26]

In the case at hand, the district court properly recognized the distinction created in *Feldman* but failed to address Musslewhite's claims of bad faith and harassment. We approach this question with only the record as our aide.[27] Musslewhite's pleadings plainly state a claim for bad faith and harassment; most of his complaint presents different shades of exactly that charge. In detail, he charges the State Bar with making him the target of a retaliatory, discriminatory, harassing conspiracy of persecution, to be procured by fraud and duress. We express no comment on the merits of his claims, we hold simply that he must be allowed to go

---

[26]*Bishop,* 736 F.2d at 295.

[27]*See GHR Energy Corp. v. Crispin Company, Ltd.,* 791 F.2d 1200, 1201 (5th Cir.1986) (Court may not look beyond record on appeal); FRAP 10(a) (record is comprised of papers, exhibits, docket entries, and transcript from the district court proceeding). Unfortunately, this reminder is necessary. Musslewhite burdened the Court with an 80-page brief and an appendix comprised of a plethora of newspaper articles. This is a Rule 12 appeal; those additional materials are beyond the proper scope of our inquiry. Presumably, if his press releases are to be believed, Musslewhite understands the rules of procedure.

14

forward.

## VIII.

In conclusion, we affirm the *Howell* construction of the *Feldman* rule; we uphold the district court's decision that the federal courts are not vested with the subject matter jurisdiction to review Musslewhite's challenges to his state court disciplinary proceeding. Musslewhite, however, sufficiently stated a claim of bad faith and harassment which vested the district court with the jurisdictional authority to proceed.[28]

We AFFIRM the district court's dismissal of all claims save as mentioned; we REVERSE and REMAND that claim to the district court for reconsideration consistent with the foregoing.

---

[28]Our decision is limited to the Rule 12 dismissal. Hence, the district court will entertain any subsequent objections raised; e.g., the various immunities (sovereign, absolute, and qualified).

15