Donald M. **JOHNSON**

v.

Bob **ODOM**, et al.

Civ. A. No. 87–1553.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Aug. 31, 1995.

---

Milton Dale Peacock, Monroe, LA, for plaintiff.

Wayne R. Crouch, Baton Rouge, LA, Winston W. Riddick, Sr., LA Comm. of Insurance, Baton Rouge, LA, for LA Dept. of Agriculture.

Wayne R. Crouch, Baton Rouge, LA, C. James Gelpi, David S. McFadden, Gelpi & Assoc., New Orleans, LA, Winston W. Riddick, Sr., LA Comm. of Insurance, Baton Rouge, LA, for Bob Odom and H.F. Calhoun, Douglas Duty, Grady Coburn, Norvin Fagan, Robert Ewing, Jack Martin, John C. Moser, Lucas Terracina, and Thomas Cascio.

Wayne R. Crouch, Baton Rouge, LA, C. James Gelpi, Gelpi & Assoc., New Orleans, LA, Donald Coleman Brown, Woodley Williams, Fenet, Boundreau & Brown, Lake Charles, LA, Winston W. Riddick, Sr., LA Comm. of Insurance, Baton Rouge, LA, for John W. Impson.

Wayne R. Crouch, Baton Rouge, LA, C. James Gelpi, Gelpi & Assoc., New Orleans, LA, Winston W. Riddick, Sr., LA Comm. of Insurance, Baton Rouge, LA, for Jeff Calloway and Dale Rinicker.

## RULING

LITTLE, District Judge.

For the following reasons, this court GRANTS defendants' motion to dismiss for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

The events that first gave rise to this case occurred more than ten years ago when crop duster Donald M. Johnson was charged with violations of Louisiana's pesticide laws. On four occasions between 1982 and 1984 the Louisiana Advisory Committee on Pesticides held hearings on these charges and recommended that the Commissioner of Agriculture assess penalties. *Johnson v. Louisiana Dept. of Agriculture,* 18 F.3d 318, 319 (5th Cir.1994). The Commissioner accepted these findings and assessed increasingly severe penalties in each instance. After three of the four hearings, Johnson appealed the Commissioner's rulings to the Louisiana District Court for East Baton Rouge Parish and to appropriate Louisiana appellate courts, where the findings of violations were generally upheld although the penalties were often reduced. *Id.* at 318–19. *See also Johnson v. Odom,* 470 So.2d 988 (La. 1st Cir.), *writ denied* 476 So.2d 355 (La.1985); *Johnson v. Odom,* 536 So.2d 541 (La. 1st Cir.1988), *writ denied* 537 So.2d 213 (La.1989).

In a separate action initiated in July 1984, the Department of Agriculture sought an injunction in the Louisiana District Court for East Carroll Parish to prevent Johnson and his crop dusting business, Transylvania Flying Service (TFS), from engaging in the illegal application of pesticides. *Commissioner of Agriculture v. Transylvania Flying Serv.,* 493 So.2d 744, 745 (La. 2d Cir.1986). At a hearing in August 1984, Johnson and the Department entered into a stipulated judgment requiring Johnson to refrain from applying pesticides for a fee until licensed by the Department. *Id.* at 746. In November 1984, Johnson filed an answer to the Department's original petition and asserted a reconventional demand against the Department seeking injunctive and monetary relief and alleging for the first time that the Department's investigations and adjudicatory hear-

ings were discriminatory and violated his civil rights. *Id.* Later in November, Johnson filed a supplemental reconventional demand naming specific individuals as defendants, most of whom are also named as defendants in the present suit. The Department responded by filing exceptions, claiming in essence that the original action had been conclusively resolved. In June 1985, the trial court sustained an exception of improper venue and dismissed the reconventional demand. The Louisiana Court of Appeals for the Second Circuit subsequently affirmed the trial court on different grounds, finding that the stipulated judgment had conclusively terminated the lawsuit and dismissed Johnson's reconventional demands without prejudice. *See id.* at 748–49.

Johnson filed this federal complaint in the United States District Court for the Western District of Louisiana in July 1987, alleging numerous constitutional and civil rights violations and naming as defendants essentially the same individuals named as defendants in his previously dismissed state reconventional demand. During the federal complaint's passage through the chambers of six different federal judges in the Western District, the defendants filed four motions for summary judgment. As a result of these motions, all of Johnson's claims, save one, have been dismissed. *Johnson v. Louisiana Dept. of Agriculture,* 18 F.3d 318 (5th Cir.1994). The sole remaining cause of action is an equal protection claim based on the Department's alleged selected prosecution of Johnson. Although the defendants assert qualified immunity as a defense to this claim, the Fifth Circuit has twice held that the defendants are not entitled to summary judgment on qualified immunity grounds. *See id.* at 322–23; *Johnson v. Odom,* 910 F.2d 1273 (5th Cir.1990), *cert. denied,* 499 U.S. 936, 111 S.Ct. 1387, 113 L.Ed.2d 443 (1991). It is in this posture that the defendants now move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, that this court dismiss Johnson's complaint for lack of subject-matter jurisdiction on the ground that the complaint is an impermissible collateral at-

tack on state court judicial proceedings under the Rooker–Feldman Doctrine.

## ROOKER–FELDMAN DOCTRINE

Defendants' claim for dismissal is based on the principle first announced by the United States Supreme Court in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), and restated in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).[1] In the more recent case, the Court dismissed two constitutional challenges brought in federal district courts by applicants to the District of Columbia bar who had been denied the opportunity to sit for the bar examination by decisions of the District of Columbia Court of Appeals. The Court held that federal district courts do not have subject-matter jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court." 460 U.S. at 486, 103 S.Ct. at 1317. Applying this principle, the Court found that the plaintiffs' allegations that the District of Columbia Court of Appeals had discriminated against them in denying their requests for waivers of state bar rules were "inextricably intertwined" with the District of Columbia Court of Appeals' judicial decisions on their requests. *Id.* at 486, 103 S.Ct. at 1317. While federal district courts would have jurisdiction over a general challenge to the constitutionality of a state bar rule, the Court observed, they would not have jurisdiction over an attack on a specific state court determination. *Id.*

The Fifth Circuit Court of Appeals has followed the Rooker–Feldman doctrine in a number of recent cases in which losing parties in state court proceedings have subsequently attempted to sue judges or prosecutors in those proceedings for alleged civil rights violations. *Chrissy F. By Medley v. Mississippi Dep't of Pub. Welfare,* 995 F.2d

---

**1.** The Rooker–Feldman line of cases has been described as the "jurisdictional transmutation of res judicata doctrine." 18 Charles A. Wright,

Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4469 at 664 (1981).

595 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1336, 127 L.Ed.2d 684 (1994); *Phinizy v. State of Alabama*, 847 F.2d 282, 283 (5th Cir.1988); *Hale v. Harney*, 786 F.2d 688 (5th Cir.1986); *Reed v. Terrell*, 759 F.2d 472, 473 (5th Cir.) *cert. denied*, 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). Most recently, the Fifth Circuit has held that a district court lacked subject matter jurisdiction over an attorney's claim that the state bar violated constitutional equal protection guarantees by selectively investigating that attorney and other similarly situated attorneys for violations of state bar rules. *Musslewhite v. State Bar of Texas*, 32 F.3d 942, 947 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995). Although the plaintiff had "couched some of his averments in the language of a general constitutional attack on the State Bar's scheme of disciplining attorneys," *Id.*, the court found that the evidence presented by the plaintiff referred solely to "his disciplinary proceeding." *Id.* The state court system, and ultimately the United States Supreme Court upon writ of certiorari, was therefore the proper forum in which to raise these objections, not the federal district courts. In the present case, defendants assert that Johnson is making a collateral attack on two sets of state court judicial proceedings—namely his judicial appeals of the Department of Agriculture adjudications and his judicial appeal of the dismissal of his reconventional demand. Both sets of adjudications, defendants argue, are "inextricably intertwined" with the claims he makes in his federal complaint.

## APPLICATION OF ROOKER–FELDMAN DOCTRINE

■ The two basic requirements for application of the Rooker–Feldman doctrine exist in this case. The first requirement is that the federal plaintiff has been a party to final judgments in state court judicial proceedings. *See Johnson v. De Grandy*, —— U.S. ——, ——, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994) (Rooker–Feldman plaintiff must have been a party to state court proceeding and had an opportunity to seek review in United States Supreme Court). In this case, Johnson was a party both to his judicial appeals of the Department of Agriculture's adjudications and to his reconventional demand and his appeal of its dismissal. Because both judicial appeals from agency decisions, *Carbonell v. Louisiana Dep't of Health and Human Resources*, 772 F.2d 185 (5th Cir.1985); *Narey v. Dean*, 32 F.3d 1521, 1525 (11th Cir.1994) (if decision of state agency has been upheld, then Rooker–Feldman doctrine applies), and counterclaims, *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994), qualify as state court proceedings that may not be reviewed by a federal court, the first requirement is clearly satisfied.

■ The second, and more important, requirement is that the plaintiff's federal complaint is "seeking what in substance would be an appellate review of the state judgment(s) in a United States District Court." *Johnson v. De Grandy*, —— U.S. ——, ——, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994). In other words, even if the plaintiff does not candidly seek review of state court judgments, the Rooker–Feldman doctrine will apply if the plaintiff's "constitutional claims presented [in federal court] are inextricably intertwined with the state court's grant or denial of relief." *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986) (quoting *Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16 (1963)). In this case, Johnson does not candidly seek review of the state court proceedings to which he was a party, but his federal complaint is nevertheless inextricably intertwined with those former proceedings in several important respects.

■ First, the defendants whom Johnson claims selectively disciplined him, and thus violated his equal protection rights, are principally the Louisiana Department of Agriculture officials who performed the functions of prosecutors and judges in the adjudications which were the subject of his initial set of judicial appeals of that agency's decisions. Second, the actual timing of Johnson's federal complaint and references in it to the dismissal of his reconventional demand suggest that the federal complaint is at least closely connected with the state court proceedings

that disposed of the reconventional demand. Johnson's complaint and his pre-trial memorandum proclaim that his federal complaint was filed within one year of the dismissal of his reconventional demand by the Louisiana Court of Appeals for the Second Circuit.

Finally, perhaps the most important links between Johnson's federal complaint and the state court proceedings (especially the reconventional demand) appear in the similar forms of relief sought, the similarity of the underlying cause of actions, and the identity of the parties sued in both federal and state actions. First, Johnson's federal complaint, like his reconventional demand, seeks monetary damages, plus legal interest and attorneys fees as well as injunctive relief. Second, both the federal complaint and the reconventional demand mirror each other with respect to most of the actual allegations raised. In particular, as in *Musslewhite v. State Bar of Texas*, 32 F.3d 942, 947 (5th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995), the one remaining claim in the federal case, that of equal protections violations due to selective prosecution, appears in both the state and federal actions.[2] Finally, as has been noted above, the parties named as defendants in both the reconventional demand and the federal complaint are practically identical, thus suggesting that Johnson is merely seeking one more opportunity to bring claims against these individuals.

In summary, the plaintiff has had ample opportunity to appeal the decisions made by the state officials named as defendants here in Louisiana courts and to request review of those state judicial proceedings in the United States Supreme Court. In fact, he has availed himself of those opportunities on numerous occasions. It is now time to put this case to rest once and for all.

For the foregoing reasons, this court GRANTS the defendants' motion to dismiss

this complaint for lack of subject-matter jurisdiction.

---

**2.** Johnson seeks to distinguish *Musslewhite* by arguing that his claims, though admittedly similar in kind to those asserted in *Musslewhite,* are "more extensive and substantive" than the claims in that case and that the defendant's actions were "far more odious and extensive." Petitioner's Memorandum in Opposition to Defendants' Motion to Dismiss, at 9. Johnson's assertions about the severity of the harms he has suffered, however, do not distinguish his case from *Musslewhite* because the essential nature of his complaint remains unchanged. The claim of selective prosecution is still an attack on the results of the specific judicial proceedings to which he was a party.