In September 1985, a civil aviation crash in Alabama killed William Champion, who was piloting the aircraft; his wife Nancy; and their three minor children. The decedents lived in Iowa. An Iowa court appointed Norwest Bank of Des Moines, N.A., as executor of the estate of Nancy Champion and appointed Delmar Champion as the administrator of the estates of the minor children.
In March 1987, these personal representatives of the estates ("the Iowa plaintiffs") filed a wrongful death action against Amcord, Inc.,[1] and others, in Iowa. In July 1991, without stating grounds, the Iowa court granted Amcord's motion to dismiss; in its motion Amcord had argued lack of jurisdiction and delay in service. The order dismissing Amcord contained no language indicating finality. In September 1991, the Iowa court was asked to approve a settlement among the parties. Mary C. Parmeter, an Iowa resident and Nancy Champion's mother, was given notice of the "application for approval of settlement." In October 1991, the Iowa court entered a final judgment, dismissing all parties with prejudice and approving the settlement among the parties.
In January 1992, the Iowa plaintiffs filed a document which read in full: "COME NOW the Plaintiffs and hereby dismiss the within cause of action with prejudice against all named defendants; defendants to pay the *Page 1240 
costs." Later in January 1992, Amcord and the Iowa plaintiffs executed a general release, which stated that Amcord was released from all claims arising out of or in any way connected with the deaths in the airplane crash occurring in September 1985, including, but not limited to, claims stated in the Iowa action that was dismissed with prejudice.
While the wrongful death action was proceeding in Iowa, Parmater had applied for and received appointment as a "special administrator" of the estates of her daughter Nancy and the three minor children. Specifically, in September 1987, the Iowa court appointed Parmater as "Special Administrator . . . for the limited purpose of pursuing claims under the laws of Alabama in Alabama at no expense to this Estate." The order further stated that such "orders constitute an election of remedies on behalf of Mary C. Parmater and effectively foreclose and/or extinguish any interest, rights or claims she may have had in the cases pending in Iowa."
Parmater then filed this lawsuit in Alabama for the alleged wrongful death of the same decedents as in the Iowa action. Amcord moved to dismiss, and Parmater voluntarily dismissed Amcord and others in 1988. However, in January 1991, the complaint was amended to bring all of them back in. Amcord filed another motion to dismiss and added a ground for dismissal, contending that the Alabama action was barred by the action pending in Iowa. All motions were denied by the Alabama trial court in August 1991. After executing the aforementioned Iowa release in January 1992 Amcord filed an answer raising the defense of res judicata, and in February 1992, Amcord filed a motion for summary judgment on the issue of res judicata. The Alabama trial court denied the motion, but allowed Amcord to petition this Court for permission to appeal on the res judicata issue. This Court denied the petition, and Amcord renewed its res judicata motion, which the Alabama trial court then granted. Parmater appealed from the summary judgment in favor of Amcord, while Amcord cross-appealed from the trial court's denial of its motion to dismiss for lack of in personam jurisdiction.
On appeal, Parmater contends that the Iowa settlement does not affect her ability to bring this wrongful death action against Amcord in Alabama.
At the outset we note that the authority of the Iowa court to appoint Parmater as a "special administrator," and the validity of the appointment, are not before this Court. Rather, assuming that the Iowa court did have authority to make such an appointment, the question before this Court is whether the settlement of the wrongful death action in Iowa precludes, under the doctrine of res judicata, another wrongful death action in Alabama based on a cause of action arising from the same nucleus of operative fact.[2]
The Iowa wrongful death statute is identical to the Alabama statute insofar as it vests the claim solely in the personal representative for the benefit of the real parties in interest.Egan v. Naylor, 208 N.W.2d 915 (Iowa 1973). The Iowa personal representatives, after having been appointed by the Iowa court, had the authority to prosecute a wrongful death action in the State of Iowa under either the Iowa Wrongful Death Act or the Alabama Wrongful Death Act. Ala. Code 1975, §§ 6-5-410, 6-5-391. Furthermore, assuming jurisdiction, the representatives could have elected to bring the wrongful death action in Alabama.Hatas v. Partin, 278 Ala. 65, 175 So.2d 759 (1965). However, under both Alabama law and Iowa law, there ultimately can be only one recovery for the wrongful death; that fact raises the question whether the settlement of the Iowa wrongful death action by the Iowa plaintiffs is res judicata as to the wrongful death action filed in Alabama by Parmater.
The elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. Smith v. Union Bank Trust Co., 653 So.2d 933 (Ala. 1995); Dairyland Ins. Co. v.Jackson, 566 So.2d 723 (Ala. 1990). If *Page 1241 
these four elements are present, then any claim that was adjudicated or could have been adjudicated in the prior action is barred from further litigation. Dairyland, supra. However, the doctrine of res judicata does not require complete identity of parties, but only that the party against whom the doctrine of res judicata is asserted either was a party or was in privity with a party to the prior action or that the nonparty's interests were adequately represented by a party in the prior action. Dairyland, supra. The test for applying the doctrine of res judicata under Iowa law is consistent with the test applied under Alabama law.
The Iowa courts have held that "[a]n adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination." Leuchtenmacher v. Farm Bureau Mutual Ins. Co.,460 N.W.2d 858, 860 (Iowa 1990). Further, Iowa courts have held that a settlement or consent judgment and subsequent dismissal with prejudice, without an actual trial, can be the basis of a plea of res judicata. Jordan v. Stuart Creamery, Inc., 258 Iowa 1,137 N.W.2d 259 (1965). Likewise, this Court has also held that a dismissal with prejudice is an adjudication on the merits. Union Bank, supra; Hammermill Paper Co. v. MontrealBoyette Sandlin Day, 336 So.2d 166 (Ala. 1976).[3]
We agree with Amcord that the doctrine of res judicata applies in these circumstances. There was a prior action with a judgment on the merits in a court of competent jurisdiction. The Iowa plaintiffs elected to file a wrongful death action in Iowa, based on Iowa law. They settled with Amcord as to all claims resulting from the accident. The dismissal of the action in Iowa, with prejudice, is a final judgment on the merits that is conclusive as to the parties with regard to claims by the estates of the decedents for their alleged wrongful deaths. The dismissal with prejudice concluded the rights of the parties, terminated the right of action, and precluded subsequent litigation of the same cause of action.
Furthermore, the plaintiffs in the Iowa action, as well as the plaintiff in the Alabama action (Parmater), were the personal representatives of the estates of the decedents. As personal representatives, they all acted as trustees for the heirs at law, who were the real parties in interest. Therefore, for purposes of the doctrine of res judicata, the plaintiffs are the same in Iowa as in Alabama, and they all sought recovery for, among other things, the alleged wrongful death of each of the decedents. The final adjudication of the Iowa case alleging the wrongful death of the decedents invokes the doctrine of res judicata and bars the action in Alabama by the same estates for the recovery of damages from the same defendant for the same alleged wrongful deaths. Once a judgment was entered dismissing with prejudice the claims brought in Iowa by the duly appointed executor/administrator of each of the decedents, all other claims for the same injuries to the same real parties' interests were extinguished. Once that judgment was entered, any claim Parmater might have had was extinguished by the authorized personal representative of the estates. The plaintiffs settled the case with the defendants and thus had a recovery; Alabama law does not permit another recovery for the same wrongful deaths. The situation in this case was essentially a race between Parmater and the Iowa plaintiffs to acquire the sole recovery available, a race the Iowa plaintiffs won.
The doctrine of res judicata is intended to put an end to litigation; it bars a plaintiff from recovering twice for a wrongful act, and it applies in this case. Therefore, the trial court correctly entered the summary judgment in favor of Amcord, and its judgment is due to be affirmed. Amcord's cross-appeal is dismissed as moot.
1940862 — AFFIRMED.
1940922 — DISMISSED. *Page 1242 
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, COOK, and SEE, JJ., concur.
BUTTS, J., dissents.
[1] The aircraft involved in this case was a Piper Aerostar, manufactured by Ted Smith Aircraft Company, Inc., which was a subsidiary of American Cement Corporation (later Amcord, Inc.) at the time of the manufacture and sale of this aircraft in 1969.
[2] It is not disputed that as to all causes of action involving these parties, the plane crash and the resulting deaths provide a common nucleus of operative fact.
[3] The Hammermill Paper Co. v. Day case is indexed in SouthernReporter 2d as Hammermill Paper Co. v. Montreal BoyetteSandlin Day.