**In re LEASE OIL ANTITRUST LITIGATION (NO. II).**

**No. MDL 1206.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

June 5, 1998.

J.A. Tony Canales, Canales & Simonson, Corpus Christi, TX, for Plaintiff.

Darrell Lee Barger, Barger & Moss, Corpus Christi, TX, for Defendant.

## ORDER NO. 21

JACK, District Judge.

On this day came on to be considered Defendant Mobil Oil Corporation's ("Mobil") motion to dismiss various claims on full faith and credit grounds and for lack of subject matter jurisdiction in the above-styled action. After consideration of the briefs filed by several parties and the oral arguments presented on May 15, 1998, the Court DENIES said motion.

### I. JURISDICTION

The Court has jurisdiction over the consolidated cases in this multidistrict litigation pursuant to the Judicial Panel on Multidistrict Litigation's transfer order of January 14, 1998, and 28 U.S.C. §§ 1331, 1332, 1367 and 1407.

### II. FACTS AND PROCEEDINGS

In April 1996, plaintiff royalty payees filed a class action suit in the Southern District of Texas, *The McMahon Foundation et al. v. Amerada Hess Corp., et al.,* against 39 oil companies, alleging that the companies, in violation of § 1 of the Sherman Act, conspired for over a decade to artificially depress oil production royalty payments owed to the putative class members. In that same month, a separate group of plaintiffs brought a class action suit in state court, *Cameron Parish School Board v. Texaco, Inc.,* against fifteen oil companies alleging violations of Louisiana law due to the underpayment of royalties owed for production of oil on properties in Louisiana. *Cameron Parish* was timely removed to federal court. In 1997, at least three other groups of plaintiffs brought separate suits in federal court based on simi-

lar royalty underpayment allegations and based on federal and/or state law violations (viz., *Randolph Energy, Inc. et. al. v. Amerada Hess Corp. et. al., Stanley v. Gulf Oil Corp. et. al., Nicholson et. al. v. Marathon Oil*).

In September 1996, a separate group of plaintiffs filed a putative class action in Alabama state court, *E.M. Lovelace et al. v. Amerada Hess Corporation et al.*, based on similar royalty underpayment allegations, asserting that 24 oil company defendants violated the separate antitrust statutes of each of the fifty states. *Lovelace* was removed to federal court, and the plaintiffs sought a remand, arguing that federal antitrust claims were not at issue in their case since their claims were based strictly on state statutes. Notably, federal antitrust claims may only be brought in federal court. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 451, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *General Investment Co. v. Lake Shore Ry.*, 260 U.S. 261, 43 S.Ct. 106, 116–17, 67 L.Ed. 244 (1922).

In April 1997, the federal court remanded *Lovelace* since it appeared that neither diversity nor federal question jurisdiction existed. Shortly after the remand, the *Lovelace* plaintiffs agreed to a global settlement agreement with Mobil which released all claims against Mobil—both state and federal—of a nationwide class of royalty payees. In May 1997, Mobil and counsel for *Lovelace* plaintiffs announced the terms of the settlement: in exchange for the nationwide class' release of all federal and state claims based on royalty underpayments, Mobil would pay $15 million to the class (with over 40% guaranteed to the attorneys), would change its method of determining royalty payments in the future, and would allow counsel for plaintiffs access to certain documents and Mobil employees.

The Alabama court ordered that the parties notify the potential settlement class members of the proposal and of a fairness hearing set for December 1997. The parties mailed actual notice to Mobil's royalty payees and published notice in national newspapers to alert all affected parties who were not Mobil payees. In December, the Alabama court held a hearing to certify a settlement class and to consider the fairness of the settlement. The named plaintiffs in *McMahon* did not appear to contest the certification or settlement, although they did exercise their right to opt out of the settlement. The named plaintiffs in *Stanley* neither appeared at the hearing nor opted out of the settlement. Represented by Lee Godfrey, intervenors from Texas state court litigation, *State of Texas et al. v. Amoco Production Co. et al.*, No. 95–8680 (345th Jud.Dist., Travis Cty, Tex.), concerning similar royalty underpayment allegations did appear and objected to both certification and settlement. After this hearing, the Alabama state court approved both a settlement class and Mobil's proposed global settlement.

Meanwhile, the Judicial Panel on Multidistrict Litigation ("JPML") was considering whether and where to consolidate the five similar federal actions which were pending and involved royalty underpayment allegations. In November 1997, counsel for plaintiffs and the defendants in *McMahon* (the first case brought on behalf of a nationwide class) filed a global settlement with the federal district court in Houston. Before the Houston court could consider the settlement, *McMahon* and the other federal cases were transferred to this Court pursuant to 28 U.S.C. § 1407 for coordinated and consolidated proceedings as *In re Lease Oil Antitrust Litigation*, MDL–1206.

On May 14 and 15, 1998, this Court held the initial pretrial conference in MDL–1206. The *McMahon* plaintiffs and 24 oil companies (representing approximately 60–70% of the oil industry) expressed their desire to pursue the settlement agreement that they had proposed prior to consolidation, and those two factions formed, respectively, the "Settling Plaintiffs" and the "Settling Defendants." The remaining plaintiffs and defendants formed the "Non-settling Plaintiffs" and the "Non-settling Defendants" factions. The Court set a hearing to consider the settlement for the settling parties and a separate hearing to consider the class certification for the non-settling parties.

Mobil then presented its motion to dismiss. Plaintiffs in *Cameron Parish* and *Randolph* retracted their opposition to Mobil's motion, but Plaintiffs in *McMahon* and *Stanley* maintain their opposition to the dismissal of Mobil from MDL–1206. Mobil argues that its settlement in *Lovelace* ("Lovelace Settlement") has released all claims raised in MDL–1206 and therefore it must be dismissed. It bases its arguments on two legal theories: (1) under the Full Faith and Credit Act, this Court is required to give the Lovelace Settlement the same preclusive effect that an Alabama state court would give it; and, (2) under the Rooker–Feldman doctrine, this Court is divested of jurisdiction over the claims which the Lovelace Settlement released. Plaintiffs opposing Mobil's motion stress that the Alabama court which approved the Lovelace Settlement was unable to exercise jurisdiction over the released federal claims, and they argue that, therefore the Lovelace Settlement does not preclude litigation of those claims of exclusive federal jurisdiction. They also propose that the Rooker–Feldman doctrine is simply inapplicable to these circumstances. Thus, the fundamental issue before this Court is: When an Alabama state court approves a global class action settlement which releases claims of exclusive federal jurisdiction, is a settling defendant protected—by either the Full Faith and Credit Act or the Rooker–Feldman doctrine—from the litigation in federal court of those purportedly released federal claims?

## III. DISCUSSION

### A. STANDING OF PLAINTIFFS TO OPPOSE MOBIL'S MOTION TO DISMISS

■ As a preliminary matter, Mobil contends that the Court must grant its motion to dismiss because the two named plaintiffs in *McMahon* opted out of the Lovelace Settlement and, consequently, lack standing. However, as Mobil has conceded, named plaintiffs in *Stanley* have not opted out of the Lovelace Settlement (Mobil's Supp. Mem. at 16; *Stanley* Plaintiff's Mem. at 1), and those plaintiffs oppose the motion to dismiss.

Since there are plaintiffs who did not opt out from the Lovelace Settlement and also oppose dismissal based on that settlement, it is proper for the Court to rule on Mobil's motion to dismiss at this point in the litigation. *See e.g., Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294 (E.D.N.Y. 1997) (district court rules on defendant's motion to dismiss on full faith and credit grounds where putative class action plaintiff had not opted out of defendant's prior settlement). That is, since at the least the *Stanley* plaintiffs have standing to oppose the motion, the Court—in order to rule on Mobil's present motion—does not need to determine whether the *McMahon* plaintiffs have standing.

### B. FULL FAITH AND CREDIT AND ALABAMA CLAIM PRECLUSION LAW

#### 1. Approach Mandated by *Matsushita*

The Full Faith and Credit Act, 28 U.S.C. § 1738, mandates that the "judicial proceedings" of any state "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

■ The Supreme Court has recently emphasized that, "[A]bsent a partial repeal of the Full Faith and Credit Act, 28 U.S.C. § 1738, by another federal statute, a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873, 876, 134 L.Ed.2d 6 (1996). "Federal courts may not employ their own rules in determining the effect of state judgments, but must accept the rule chosen by the state from which the judgment is taken." *Id.* 116 S.Ct. at 877 (citations omitted).

*Matsushita* specified that class actions constituted "judicial proceedings" for § 1738 purposes and that, at least "at the outset," § 1738 controls where the underlying judgment is the approval of a settlement. *Id.* 116 S.Ct. at 878. Most importantly, the Supreme Court decided that, in some circumstances, a state court settlement could have preclusive effects on claims which may be brought exclusively in federal courts. *Id.* Ultimately,

the *Matsushita* court arrived at the following rule: " § 1738 is generally applicable in all cases in which the state court judgment at issue incorporates a class action settlement releasing claims solely within the jurisdiction of the federal courts." *Id.*

The *Matsushita* court also outlined a two-step approach for applying this general rule:

> When faced with a state court judgment relating to an exclusively federal claim, a federal court must first look to the law of the rendering State to ascertain the effect of the judgment. If the state law indicates that the particular claim or issue would be barred from the litigation in a court of that state, then the federal court must next decide whether, as an exception to § 1738, it should refuse to give preclusive effect to the state court judgment.

*Id.* (citations omitted). Thus, this Court's first task is to determine the effect of the Lovelace Settlement under Alabama law. That is, the Court must answer this strictly hypothetical question: if a plaintiffs brought federal antitrust claims against Mobil in an Alabama state court[1], would that Alabama court give the Lovelace Settlement claim preclusive effect over those claims of exclusive federal jurisdiction?

In *Matsushita* and *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), the Supreme Court acknowledged that the inquiry into state law on this preclusion issue might not yield a direct answer: "Usually 'a state court will not have occasion to address the specific question whether a state judgement has issue or claim preclusive effect in a later action that can be brought only in federal court.' " *Matsushita,* 116 S.Ct. at 878 (quoting *Marrese,* 105 S.Ct. at 1332). Nevertheless, *Matsushita* counsels that "Where a judicially approved settlement is under consideration, a federal court may consequently find guidance from general state law on the preclusive force of settlement judgments." *Id.* at 878–89.

The Court will proceed by following as closely as possible the method outlined in *Matsushita* and by seeking answers in Alabama law and general state law to two questions: (1) Irrespective of whether the prior judgment is an adjudication or a settlement, what is Alabama's general rule of claim preclusion with respect to claims of exclusive federal jurisdiction? and, (2) Does Alabama apply this same general rule of claim preclusion when determining the scope of the preclusive effect of settlements, as well as of adjudications?

## 2. Alabama's General Rule of Claim Preclusion

The Court first considers what is Alabama's general rule of claim preclusion, irrespective of whether the prior judgment is an adjudication or a settlement. It is appropriate to consider this question first because, in order to answer the second question, it is necessary to understand the elements and nature of the general preclusion rule. That is, in order to recognize whether Alabama has adopted a distinct preclusion rule for settlements, it is necessary to first recognize the general rule from which any special "settlement rule" would be distinguishing itself.

### a. *Marrese*'s Survey of General State Preclusion Law

Before addressing Alabama preclusion law in particular, the Court should recognize that, in the antitrust context, the Supreme Court in *Marrese* has already described the general law of the states with respect to the preclusive force of state judgments over exclusive federal claims. First, citing the Restatement (Second) of Judgments, *Marrese* noted that "claim preclusion generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts …' " *Marrese,* 105 S.Ct. at 1333 (quoting Restatement, *supra,* § 26(1)(c)(1982)). This rule is generally

---

1. Of course, a plaintiff may not bring such a suit because federal antitrust claims may be brought only in federal court. *See e.g. Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Freeman v. Bee Mach. Co.,* 319 U.S. 448, 451, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *General Investment Co. v. Lake Shore Ry.,* 260 U.S. 261, 43 S.Ct. 106, 116–17, 67 L.Ed. 244 (1922).

knows as the prior jurisdictional competency rule. *Marrese* continues: "If state preclusion law includes this requirement of prior jurisdictional competency, which is generally true, a state judgment will not have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts." *Id.* After *Marrese*, the Ninth Circuit and one district court have addressed the question of whether a prior state court judgment precludes subsequent federal antitrust suits, and they determined that both Illinois and California follow this general rule requiring prior jurisdictional competency. *Eichman v. Fotomat Corp.*, 759 F.2d 1434 (9th Cir.1985); *Marrese v. American Academy of Orthopaedic Surgeons*, 628 F.Supp. 918 (N.D.Ill.1986) (on remand from Supreme Court).

Not only does the *Marrese* court recognize the predominance of the prior jurisdictional competency rule, it also explains that exceptions to this general rule should be construed narrowly: "Even in the event that a party asserting the affirmative defense of claim preclusion can show that state preclusion rules in some circumstances bar a claim outside the jurisdiction of the court that rendered the initial judgment, the federal court should first consider whether application of the state rules would bar the particular federal claim." *Id.* at 1333. That is, *Marrese* indicates the prior jurisdictional competency rule is the norm, and it instructs federal courts to avoid extending exceptions to that norm beyond the scope intended by state law.

For example, *Marrese* cast much doubt on the Fourth Circuit's holding in *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). In *Nash,* the Fourth Circuit applied federal—rather than state—preclusion principles in order to support its conclusion that a state judgment approving settlement of state antitrust claims barred a subsequent federal antitrust claim. While explaining that the prior jurisdictional competency rule is the norm under state law, the *Marrese* court noted that the *Nash* court should have relied on state preclusion law—rather than federal

principles—when deciding whether the federal claim was barred. *Marrese,* 105 S.Ct. at 1333, n. 2. Then *Marrese* reiterated that it was "unwilling to create a special exception to § 1738 for federal antitrust claims that would give state court judgment greater preclusive effect than would the courts of the State rendering the judgment." *Id.* at 1334. *Marrese* stated: "To the extent that state preclusion law indicates that a judgment normally does not have claim preclusive effect as to matters that the court lacked jurisdiction to entertain, lower courts and commentators have correctly concluded that a state court judgment does not bar a subsequent federal antitrust claim." *Id.* at 1333 (citations omitted).

In sum, *Marrese* is significant for at least four reasons to this Court's present inquiry. First, it reports that, as of 1985, the general rule in state law was that prior jurisdictional competency was required for a state court to render a judgment with preclusive effect. Second, in accordance with this general rule, the court suggests that state court judgements do not bar subsequent federal antitrust claims unless the state preclusion law indicates otherwise. Third, it emphasizes that any exception to this requirement of prior jurisdictional competency must be firmly grounded in general principles of the rendering state's law—and not simply based on federal principles of law. Fourth, it instructs federal courts not to assume that a particular exception to the prior jurisdictional competency rule implies the existence of a broad exception to the ordinary rule. *Id* at 1333 (even where an exception to the prior jurisdictional competency rule exists in state law, "the federal court should first consider whether application of the state rules would bar the particular federal claim").

### b. *Matsushita*'s Approach to Delaware's Preclusion Law

In *Matsushita,* a class action securities suit, the Supreme Court determined that Delaware had abandoned the prior jurisdictional competency rule and would give preclusive effect to settlement judgments in subsequent federal suits. It is instructive to consider on what evidence of state preclusion law the

Supreme Court relied when deciding that Delaware followed this exceptional rule.

The *Matsushita* court first noted that, as of 1967, Delaware apparently followed the general rule in the context of both adjudications and settlements—that is, it had required prior jurisdictional competency in all circumstances. *Id.* at 879. To support this observation, the court cited *Ezzes v. Ackerman,* 234 A.2d 444, (Del.1967) which stated Delaware's claim preclusion rule as follows:

> [A] judgment entered either after trial on the merits or upon an approved settlement is *res judicata* and bars subsequent suit on the same claim. . . . [T]he defense of *res judicata* . . . is available if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, and if the facts were known or could have been known to the plaintiff in the second action at the time of the first action. *Ezzes* 234 A.2d at 445–46.

*Matsushita,* 116 S.Ct. at 879. The Supreme Court assumed that this language meant that Delaware required prior jurisdictional competency—for settlements as well as adjudications—at the time that *Ezzes* was decided. Next, the *Matsushita* court observed that a Delaware Court of Chancery had subsequently reported that " 'the *Ezzes* inquiry [was] modified in regard to class actions,' *In re Union Square Associates Securities Litigation,* C.A. No. 11028, 1993 WL 220528, *3 (June 16, 1993), by the Delaware Supreme Court's decision in *Nottingham Partners v. Dana,* 564 A.2d 1089 (Del.1989)." *Id.*

In *Nottingham,* the Delaware Supreme Court approved a class action settlement which released securities claims then pending in federal court. Like the *Union Square* court before it, the Supreme Court opined that *Nottingham* "appears to have eliminated the *Ezzes* requirement that the claims could have been raised in the suit that produced the settlement, at least with respect to class actions." *Matsushita,* 116 S.Ct. at 879. It

cited the following language from *Nottingham* as indicating the adoption of a new rule: "In order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and *might not have been presentable* in the class action." *Id.* (quoting 564 A.2d at 1106) (emphasis added). Thus, the *Matsushita* court had case law with a holding that supported the view that Delaware had abandoned the prior jurisdictional competency requirement; notably, *Matsushita*—in accordance with the guidance of *Marrese*—cabined *Nottingham* to its explicit holding by reiterating that Delaware's new rule appeared to apply only in the class action context. *Id.*

**c. Alabama's Preclusion Law and its Rule of Prior Jurisdictional Competency**

The benchmark Alabama case reciting the elements necessary for a finding of claim preclusion is *Wheeler v. First Alabama Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala. 1978):

> The elements of *res judicata* are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.

The key language here—which has been repeated consistently by the Alabama Supreme Court through 1997[2]—is the limitation of preclusive effect to those claims which "could have been litigated in the prior action." *Id.* To begin, an ordinary reading of that phrase would indicate that the Alabama Supreme

---

2.  *Leverette ex rel. Gilmore v. Leverette,* 479 So.2d 1229, 1235–36 (Ala.1985); *Sanders v. First Bank of Grove Hill et al.,* 564 So.2d 869, 872 (Ala. 1990); *McCorkle v. McElwey,* 576 So.2d 202, 205 (Ala.1991); *Parmater v. Amcord Inc.,* 699 So.2d

1238, 1240–41 (Ala.1997). The Eleventh Circuit has also recently repeated the key phrase. *Mitchell v. Humana Hospital–Shoals,* 942 F.2d 1581, 1583 (11 Cir.1991).

Court requires prior jurisdictional competency even more firmly than did the Delaware court under *Ezzes*. *Compare, Ezzes*, 234 A.2d at 445–46 ("if the pleadings in the first action would have permitted the raising of the issue sought to be raised in the second action ...."). Thus, in light of the Supreme Court's reading of *Ezzes*, it appears reasonable to assume that Alabama follows the prior jurisdictional competency rule.

This reading is fortified by the fact that, as explained above, *Marrese* has determined that the states generally follow the rule of prior jurisdictional competency. *Marrese*, 105 S.Ct. at 1333. Moreover, *Marrese* specifically indicated that this general rule appeared to be applicable to antitrust actions, and it approvingly cited the Restatement (Second) of Judgements several times on this issue. *Id.*[3] The immediate question for this Court is whether this general rule, as explained by *Marrese* and the Restatement, holds true in Alabama law for judgments in general.[4]

While Alabama courts have not cited to § 26 of the Restatement of Judgments in particular, they have frequently relied on portions of the Restatement concerning other aspects of preclusion law. For instance, Alabama courts have cited the Restatement's "transactional test," *Selma Foundry & Supply Co. v. Peoples Bank & Trust Co.*, 598 So.2d 844, 848 (Ala.1992), its rule against piecemeal litigation, *Century 21 Preferred Properties Inc. v. Alabama Real Estate Commission*, 401 So.2d 764, 768 (Ala.1981); its rule for determination of the preclusive effect of a quasi-judicial body's decision, *Carden v. Personnel Bd.*, 474 So.2d 1155, 1156 (Ala.Civ.App.1985); its rules of terminology, *Ayers v. State*, 659 So.2d 177, 181 (Ala.Crim. App.1994); its explanation of the effect of the merger of law and equity on preclusion issues, *Lesley v. City of Montgomery*, 485 So.2d 1088, 1091 (Ala.1986); and its explanation of the dropping of the mutuality require-

ment, *Jones v. Blanton*, 644 So.2d 882, 886 (Ala.1994).

Most significantly, the Alabama Supreme Court relied on the Restatement in *Terrell v. City of Bessemer*, 406 So.2d 337 (Ala.1981) to fill a gap in Alabama preclusion law concerning an issue which is akin to the instant issue. In *Terrell*, the plaintiff filed § 1983 and common law tort claims in federal court, but that court declined to exercise supplementary jurisdiction over the tort claims even though they arose from the same incident. While the federal claims were still pending, the plaintiff filed his tort claims in state court. The state court defendant moved for dismissal based on the fact that Alabama law prohibits the splitting of actions against the same party. In discussing the propriety of exercising jurisdiction, the Alabama court looked to preclusion law and the Restatement of Judgments for guidance. And, in deciding that the plaintiff could bring the state court action where his claims could not be heard in federal court, the Alabama Supreme Court explicitly adopted the following rule from the Restatement:

A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should not be held precluded. Restatement (Second) of Judg-

---

**3.** In particular, *Marrese* favorably refers to the *Restatements* § 26(1)(c), Illustration 2: "A Co. brings an action against B Co. in a state court under a state antitrust law and loses on the merits. It then commences an action in a federal court upon the same facts, charging violations of the federal antitrust laws, of which the federal

courts have exclusive jurisdiction. The second action is not barred."

**4.** In Section III.3, infra, the Court considers whether this rule applies in the context of settlements, as well as adjudications.

ments, Explanatory Notes § 61.1, comment e at 160 (Tent. Draft No. 5, 1978). *Id.* at 339–40. While this section of the Restatement pertains to a plaintiff's ability to bring concurrent actions, the fact that the Alabama court adopted it signifies two things: (1) it reaffirms that the Alabama Supreme Court sometimes looks to the Restatement for guidance in filling gaps in its own law of judgments; and, (2) it indicates that Alabama law supports a policy against allowing a court which does not exercise jurisdiction over claims (i.e., the federal court in *Terrell* ) to issue decisions which have binding legal effect on claims outside of its jurisdiction (i.e., Terrell's state law claims). In short, *Terrell* confirms that it is reasonable to assume that Alabama has not decided to eschew the Restatement's rule—and the "general[ ]" rule, *Marrese*, 105 S.Ct. at 1333—which requires prior jurisdictional competency for a judgment to have preclusive effect.

An Eleventh Circuit interpretation of Alabama preclusion law also bolsters this Court's determination that Alabama follows the prior jurisdictional competency rule. In *Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376 (11 Cir.1988), the court decided that, where an Alabama state court did not have the authority to hear a federal claim, that Alabama court's judgment of a similar state law claim did not preclude the subsequent litigation in federal court of the federal claim.

Carlisle, a principal, was transferred by his school board. He appealed the board's decision to the Alabama State Tenure Commission, which overturned the board. The board then appealed to the county circuit court which reversed the Commission. The state court of appeals affirmed the county court. Subsequently, the EEOC issued the principal a right to sue letter for race discrimination, and the principal brought his Title VII action in federal court. The federal district court properly determined that a state court's review of the Commission's decision had claim preclusive effect in general, but it also decided that the state court's review of the Com-

mission's decision precluded the Title VII suit. On appeal, the Eleventh Circuit first determined that the Commission could not have heard the race discrimination claim because it was not within its mandate. *Id.* at 1381. The *Carlisle* court, citing the usual Alabama preclusion rule that " 'res judicata extends ... to any issue that could have been litigated' " *Id.* (quoting *McGruder v. B & L Constr. Co.*, 331 So.2d 257 (Ala.1976))—then concluded that the state court's decision would not have preclusive effect on the racial discrimination claim since the plaintiff could not have raised the federal claim before the Commission. *Id.* at 1382.

Although the Eleventh Circuit does not explicitly explain how it reaches this conclusion, it appears the court must have acted on the premise that, in Alabama, claim preclusion applies *only* to those claims which the first court could have heard. In other words, it assumes the rule of interpretation *expressio unius est exclusio alterius* applies to Alabama's claim preclusion doctrine when it states that "the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue *which was or could have been* litigated in the prior action." *Wheeler*, 364 So.2d at 1199.[5] This application in *Carlisle* simply confirms what the Court has determined by an ordinary reading of the Alabama rule in the context of general state preclusion law and the Restatement: that Alabama law requires prior jurisdictional competency for judgments in general to have preclusive effect.

In sum, it appears that Alabama follows the prior jurisdictional competency rule. First, an ordinary reading of Alabama's preclusion rule supports this finding, and both the Supreme Court's interpretation of similar language in *Ezzes* and the Eleventh Circuit's holding in *Carlisle* confirm this ordinary reading. Second, as the Supreme Court explained, the general rule in the states is that of prior jurisdictional competency. The Restatement of Judgments adopts this rule, and the Alabama Supreme Court has frequently relied on the Restatement when applying its own preclusion law. Accordingly, the Court

---

**5.** The Alabama Supreme Court approvingly cited *Carlisle* in *Smith v. Alabama Aviation and Tech-* *nical College,* 683 So.2d 426 (Ala.95) for other propositions of law.

FINDS that Alabama law requires that its court have prior jurisdictional competency in order for its judgments—in general—to have preclusive effect on subsequent claims.

### 3. Has Alabama Adopted a Special Claim Preclusion Rule with respect to Settlement Judgments?

Mobil's strongest argument is that Alabama, like Delaware, has discarded the prior jurisdictional competency rule in the context of class action settlements. On this issue, the evidence in Alabama law is slight, but, in light of *Matsushita* and *Marrese,* it cannot be said that Alabama has adopted Delaware's rule.

### a. Alabama Courts' Traditional Application of the Prior Jurisdictional Competency Rule in the Settlement Context

■ In *Matsushita,* the Supreme Court determined that the original rule in Delaware was prior jurisdictional competency and that this rule applied in both the context of a "judgment entered either after trial on the merits or upon an approved settlement." 116 S.Ct. at 879 (quoting *Ezzes,* 234 A.2d at 445). However, the Supreme Court—in consonance with a lower Delaware court—observed that in 1989, the *Nottingham* court had distinguished between settlement judgments and adjudications when it held that a settlement could have the effect of releasing claims beyond the court's jurisdictional capacity.

At least until 1996, there was not a single indication in Alabama caselaw that Alabama distinguished between settlements and adjudications when applying its claim preclusion law. For example, it stated the same critical language (i.e., that preclusion extends to any "issue which was or could have been litigated in the prior action" *Wheeler,* 364 So.2d at 1199) in several cases involving court-approved settlements. *See e.g. Educators' Investment Corporation of Alabama, Inc. v. Autrey,* 383 So.2d 536, 538 (Ala.1980) (class action settlement); *Parmater v. Amcord, Inc.,* 699 So.2d 1238, 1240–41 (Ala.1997) (settlement); *Lott v. Toomey,* 477 So.2d 316, 319 (Ala.1985) (consent decree).

In particular, in *Autrey,* 383 So.2d 536, a corporation brought suit in Alabama state court seeking payment from a shareholder on a promissory note. However, the defendant asserted that the claim was precluded by a settlement that the class of shareholders recently had entered into with the plaintiff corporation. In applying the *Wheeler* criteria, the state court held that the claims were precluded "because the issue of the corporation's remedies for indebtedness was before the trial court in the prior suit between same parties and because the specific question of exclusivity at least could have been determined." *Id.* at 539. The *Autrey* court's holding even suggests that, if it had been impossible to raise the question of exclusivity in the previous action, the present claims would not be precluded by the settlement.

In 1997, the Alabama Supreme Court again stated its usual claim preclusion rule—that is, the prior jurisdictional competency rule—in a case where it evaluated the preclusive effect of a settlement judgment. In *Parmater,* 699 So.2d 1238, the Court decided whether the settlement of a wrongful death action in Iowa precluded, under the claim preclusion doctrine, a subsequent wrongful death action in Alabama based on a cause of action arising from the same nucleus of operative fact. In that case, an Iowa family was killed when their private airplane crashed. The court-appointed representatives of the family's estate sued Amcord in Iowa state court, and subsequently the parties entered a settlement which released all claims against Amcord. Meanwhile, a relative of the family gained appointment as a "special administrator for the limited purpose of pursuing claims under the laws of Alabama." This relative then sued Amcord in Alabama court, and Amcord asserted that the Iowa settlement precluded the Alabama suit.

In discussing Alabama claim preclusion law, the *Parmater* court repeated the prior jurisdictional competency rule, precisely as it is stated in *Wheeler* in the context of an adjudication. *Id.* at 1240–41. The *Parmater* court commented that Iowa preclusion law was consistent with Alabama law and stated that Iowa's preclusion rule holds that " '[a] prior adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been present-

ed to the court for determination.'" *Id.* at 1241 (citing *Leuchtenmacher v. Farm Bureau Mutual Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990)). The Alabama court then held that the claims were identical in the two suits and the Iowa settlement precluded the Alabama suit.

In two ways, *Parmater* illustrates that the Alabama Supreme Court does not recognize any distinction between settlements and adjudications when considering claim preclusive effect. First, where its holding determined the preclusive effect of a settlement rather than an adjudication, the court simply repeats the *Wheeler* language concerning prior jurisdictional competency. Second, although the case concerns a settlement, the court cites a statement of Iowa preclusion law which—as stated—appears to apply only to "adjudication[s]." *Id.* Thus, the *Parmater* court collapses any distinction between the settlements and adjudications. The possibility that there could be a distinct rule in Iowa or Alabama law for the preclusive effect of settlements, in contrast to adjudications, does not seem to be even a remote consideration to the *Parmater* court.

### b. Mobil's Misplaced Reliance on *Adams*

Mobil essentially argues that Alabama does not follow the prior jurisdictional competency rule in the circumstances of a class action settlement. In doing so, Mobil depends almost exclusively on a single sentence found appended to a recent Alabama Supreme Court decision, *Adams v. Robertson*, 676 So.2d 1265 (Ala.1995), *cert. dismissed as improvidently granted*, 520 U.S. 83, 117 S.Ct. 1028, 137 L.Ed.2d 203 (1997). As explained below, Mobil's reliance is misplaced.

In that case, Adams sued an insurance company on behalf of a nationwide class, alleging a fraudulent scheme to get the plaintiffs to choose to switch to less-comprehensive coverage. After Adams sued, two other plaintiffs filed their own suits, but these suits were stayed so Adams' case could be handled without interference. The trial court approved the class and the settlement without allowing objectors to opt-out of the class. The court refused their opt-out because it

had certified the class pursuant to Rule 23(b)(1) and 23(b)(2) rather than 23(b)(3).[6] In *Adams*, the objectors argued that, since a few plaintiffs in the class were entitled to money damages rather than injunctive relief, the class should have been certified under Rule 23(b)(3) and, consequently, they should have been allowed to opt out. They also argued that the settlement was inadequate compensation.

The significance of *Adams* for the instant case is that the settlement released all claims related to the disputed insurance program and which were based on allegations of fraud, misrepresentation, concealment, failure to disclose or other tortious conduct in breach of duty. At one point in its discussion of the adequacy of the settlement, the trial court stated as follows:

> The Court concludes that a class action settlement may release not only the claims alleged in the complaint and before the Court, but also claims which could have been alleged by reason of, or in connection with, any matter or scheme or facts set forth or referred to in the complaint. Even where a court does not have the power to adjudicate a claim, it may still approve release of that claim as a condition of the settlement of an action before it. *See e.g., In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 221 (5th Cir.1981); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29 (1st Cir.1991); *Huguley v. General Motors Corp.*, 999 F.2d 142, 145 (6th Cir.1993); *Grimes v. Vitalink*, 17 F.3d 1553, 1994 WL 70482 (3d Cir. March 9, 1994).

*Id.* at 1300. The first sentence simply repeats the general Alabama preclusion rule, while the second appears to expand that rule beyond its ordinary scope, at least in the context of settlements. There are basically two types of reasons why this phrase should not be relied on as evidence that Alabama has renounced the prior jurisdictional competency rule in the context of class settlements: first, the trial court's use of this phrase is dictum and not necessarily grounded in caselaw; second, the Alabama Supreme Court

---

**6.** Alabama rules of procedure read the same as the Federal Rules.

has not authoritatively adopted the trial court's exceptional statement of the law.

To begin, the *Adams* settlement could not possibly release any claims of exclusive federal jurisdiction (i.e., antitrust, securities, patent), and therefore the trial court's "conclusion of law" appears to be surplusage. At best, the trial court included this phrase in order to bolster its immediately preceding conclusion that the settlement could properly release claims that could not have been raised in the underlying litigation due simply to the fact that, as a practical matter, many unnamed class plaintiffs did not receive notice of the settlement. *See* 676 So.2d at 1300 (conclusions of law 12 and 13). This certainly is not the use to which Mobil aims to put the *Adams* phrase. Since the phrase is dictum, its value in this inquiry is limited.

Moreover, the trial court seems to be stating a rule of preclusion based on principles of federal law, rather than Alabama law, since it cites only federal courts for its proposed rule. It is possible that the trial court, like the Fourth Circuit in *Nash*, believed that federal preclusion principles determined the preclusive effects of a global settlement, but *Matsushita* has clearly disabused all of that notion. 116 S.Ct. at 878. Mobil even suggests that it was proper for the trial court to cite federal cases on this issue since it was determining the fairness of a class action settlement under Rule 23(e) (Mobil's Supp. Mem at 4–5.). While Alabama may consider federal construction of Rule 23(e) as persuasive authority, *First Ala. Bank of Montgomery, N.A. v. Martin*, 381 So.2d 32, 33–34 (Ala. 1980), *cert. denied*, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983), the trial court purportedly was stating the preclusive effect of a settlement—not explaining whether the settlement was fair. As explained above, the question of claim preclusion is strictly a question of state law, and thus both Mobil and the trial court may have gone astray insofar as they may have believed that the preclusion rule stated in *Adams* could properly be grounded in federal preclusion principles.

Further, two of the four cases on which the trial court relies do not even support the rule that Mobil wants this Court to read into the phrase. For example, the Fifth Circuit case, *In re Corrugated Container,* held that a federal court could release state claims even though they were not pending in federal court, and therefore *Corrugated Container* says nothing about the release of claims over which a court is prohibited from exercising jurisdiction. In fact, the Fifth Circuit explicitly refrained from ruling on whether "a federal court may be jurisdictionally barred in some circumstances from releasing state claims not before it." 643 F.2d at 221, n. 39. While two of the cases cited by the trial court (i.e., *Nottingham* and *Grimes* ) do recite the same rule stated by the Alabama trial court, those statements of the law are both based on Delaware law and the doctrine it adopted in 1989, as explained above in the discussion of *Matsushita*, where the Supreme Court determined that the Delaware rule was a departure from its former rule of prior jurisdictional competency.

The trial court's statement of the law in itself is simply poor support for Mobil. Since the Alabama trial court did not need to decide if exclusive federal claims could be released, its statement to that effect was dictum. Moreover, that dictum carries a questionable pedigree because it apparently was extrapolated from either Delaware law or apocryphal federal principles preclusion law (which the Supreme Court says do not govern the issue).

Second, the Alabama Supreme Court's treatment of the trial court's dictum does not support Mobil's position. The court's two principal holdings do not relate to the issue of the scope of the settlement's release. First, the Alabama Supreme Court agreed with the trial court that the denial of the right to opt-out in this case did not violate the objectors' Due Process rights. Second, it also confirmed that the settlement was "fair, adequate and reasonable." *Id.* at 1273. While this second holding does relate peripherally to the issue of the settlement's scope, the Alabama Supreme Court discussed the adequacy of the settlement for less than one page, addressed only one aspect of adequacy in detail (the percentage of objectors to the settlement), and simply stated that it had "thoroughly review[ed]" the trial court's findings of fact and conclusions of law. *Id.* at

1272–73. The court then stated that it was "attach[ing] those findings and the final order as an appendix to this opinion." *Id.* at 1273.

Rather than simply stating that it would adopt the trial court's order, the *Adams* court stated that it was attaching the decision as an appendix. Presumably, it attached "the findings and the final order," *id.*, in order that readers of the Supreme Court's opinion could know what findings of fact reflected an adequate settlement, rather than for the purpose of adopting any novel interpretations of Alabama preclusion law. The issue of the scope of the settlement was never explicitly addressed by the Alabama Supreme Court, and it certainly made no ruling in that regard.

Finally, after issuing *Adams,* the Alabama Supreme Court has reiterated its preclusion law in precisely the same language that it always used prior to *Adams,* without making any comment concerning the sea-change in preclusion law that *Adams* purportedly represents. *See Parmater,* 699 So.2d at 1240–41. The Court has already summarized the significance of *Parmater:* it indicates that the Alabama Supreme Court has not recognized any distinction between claim preclusion law for settlements as opposed to adjudications.[7] In contrast to the instant case and Alabama caselaw, in *Matsushita,* the Supreme Court determined that Delaware had abandoned the prior jurisdictional competency rule only after it found that *Nottingham* clearly indicated such an abandonment and only after noting that a Delaware Court of Chancery had likewise recognized this distinct departure from *Ezzes.* Considering that the trial court's phrase was merely dicta and that the Alabama Supreme Court has not adopted that phrase or a distinction between settlements and adjudications with respect to their preclusive effect, it is evident that Alabama has maintained the general

rule of prior jurisdictional competency, even in the context of class action settlements.

■ In sum, this Court is required to make the same inquiry that the *Matsushita* court made: in particular, the Court is bound to determine the significance of the recurrent language in Alabama case law which states that a judgment's preclusive effect will extend to "any claim that was adjudicated or could have been adjudicated in the prior action." Clearly, Alabama's general claim preclusion rule is prior jurisdictional competency. And, the Alabama Supreme Court regularly applies that test in the settlement context. Although one trial court has suggested in dicta that there is a distinction between settlement judgments and adjudications for preclusion purposes, the Alabama Supreme Court appears not to have recognized any such distinction. Thus, this Court finds the traditional holdings of the Alabama Supreme Court to be a more reliable basis for this ruling than the language in *Adams.* That is, *Adams* does not represent an adoption of a new preclusion rule, the way that *Nottingham* and subsequent cases did in Delaware.

For the forgoing reasons, the Court FINDS that the Lovelace Settlement does not have preclusive effect on subsequent actions brought under federal antitrust law. Since Alabama law does not bar the federal antitrust claims raised in the instant litigation, it is not necessary to determine if an exception to § 1738 should apply, *Marrese,* 105 S.Ct. at 1335; in particular, this means that the Court need not address Plaintiffs' arguments that they were deprived due process by the Alabama court's approval of the Lovelace Settlement.

## C. ROOKER–FELDMAN DOCTRINE

■ The Rooker–Feldman doctrine holds that federal courts lack jurisdiction to entertain collateral attacks on state court judg-

---

7. *Parmater* could be distinguished from *Adams* based on the fact that the latter concerns a class action while the former does not. However, the language in *Adams* appears to cover all settlements, without making any such distinction. Therefore, if the Alabama Supreme Court actually had adopted a new settlement rule (like the Delaware rule) in 1996, it would have been nec-

essary for the *Parmater* court to make this distinction between class action and ordinary settlements before it simply reiterated the prior jurisdictional competency rule in the context of an ordinary settlement. Thus, the fact that *Parmater* did not make any such distinction implies that *Adams* did not adopt a novel preclusion rule in Alabama.

ments. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994); *see, Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, federal district courts, as courts of original jurisdiction, lack jurisdiction to review, modify, or nullify final orders of state courts. *Id.* (citing *Kimball v. Florida Bar*, 632 F.2d 1283, 1284 (5th Cir.1980)).

■ There are two requirements for application of the Rooker–Feldman doctrine: First, the plaintiff must have been a party to a final judgment in state court judicial proceedings, *Johnson v. De Grandy*, 512 U.S. 997, 114 S.Ct. 2647, 2654, 129 L.Ed.2d 775 (1994); *Johnson v. Odom*, 901 F.Supp. 220, 223 (W.D.La.1995). Second, the plaintiff's federal complaint must seek "what in substance would be an appellate review of the state judgment(s) in a United States District Court." *Id.* (quoting *Johnson*, 114 S.Ct. at 2654). In other words, even if the plaintiff does not expressly seek review of state court judgments, the Rooker–Feldman doctrine applies if the federal court is confronted with issues that are "inextricably intertwined" with a state court judgment and the court is in essence being called upon to review the state court decision. *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir.1995); *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir.1994); *see also Odom*, 901 F.Supp. at 223.

■ In separate motions, Mobil has suggested that Rooker–Feldman bars the Court from reviewing two distinct decisions made by the *Lovelace* court: (1) its decision to certify the class and approve the settlement (Mobil's Memorandum at 23–25), and (2) its decision that it had jurisdiction to approve the settlement which included the release of exclusive federal claims (Mobil's Reply Mem. at 15, n. 14.)

For the purposes of ruling on Mobil's Full Faith and Credit arguments, this Court has assumed the validity of all decisions made by the *Lovelace* court. That is, the Court bases its denial of Mobil's Full Faith and Credit motion strictly on the determination that Ala-

bama preclusion law would not afford the Lovelace Settlement preclusive effect with respect to the federal antitrust claims which it purports to release. Since the Court has assumed the validity of all aspects of the *Lovelace* decision, Mobil's Rooker–Feldman arguments are groundless.

Mobil's first contention is clearly rendered moot because the Court has based this decision solely on the determination that Alabama law would not grant claim preclusive effect to the Lovelace Settlement over federal antitrust claims. In doing so, this Court has not even obliquely addressed the issues pertaining to the class certification and the adequacy of the settlement. Therefore, the Court simply has not reviewed any such judgment made by the *Lovelace* court.

Mobil's second contention depends on a misconstrual of the significance of the *Lovelace* court's statements that it had "jurisdiction over Mobil, the Class, and the subject matter of the Class Action" in its Final Judgment Dismissing Claims Against Mobil with Prejudice of December 12, 1997 (Para.1), and that it "had jurisdiction over the settling parties in this action and the subject matter of this action" in its Conclusions of Law signed the same date (Para.1). This Court must not—and does not—challenge the *Lovelace* court's determination that it had subject matter jurisdiction over the claims before it. *See e.g., Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assoc.*, 455 U.S. 691, 706, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). Not even the objectors in the *Lovelace* litigation contested that the Alabama court lacked jurisdiction over the subject matter before it. (Mobil's Memorandum at 16.). It is settled that the *Lovelace* court had jurisdiction over the claims before it.

However, it is critical to recognize that the only claims before the *Lovelace* court were state law claims—not the federal antitrust claims. And, as shown by *Matsushita*, the simple fact that the state court has subject matter jurisdiction over certain state law claims is not dispositive proof that any settlement which the state court approves will have preclusive effect over exclusively feder-

al claims in subsequent litigation. As the Supreme Court has clarified, the two issues of subject matter jurisdiction over state law claims and of claim preclusive effect on exclusively federal claims are separate: in *Matsushita*, there was no question that the Delaware court had subject matter jurisdiction over the state claims,[8] yet it remained necessary for the federal court to determine the separate question under state law of the preclusive effect of the settlement which the state court—with jurisdiction over the claims before it—had approved.

Thus, the error in Mobil's position is to assume that this Court, when determining the preclusive effect of the Lovelace Settlement under Alabama law, must also be reviewing the *Lovelace* court's decision that it had subject matter jurisdiction over state law claims. As just explained, these are two distinct issues. Notably, the parties and objectors in *Lovelace* did not argue the issue of the Lovelace Settlement's preclusive effect, and the Lovelace court, of course, did not enter any order with respect to the settlement's preclusive effect. Thus, this Court's decision grounded in preclusion law does not represent a review of the *Lovelace* court's determination that it had subject matter jurisdiction. Rather, the Court has made the kind of determination of preclusive effect that an Alabama court would be allowed to make. When a federal court takes action which would be allowed in a state court of the rendering state, Rooker–Feldman is inapplicable. *Davis*, 70 F.3d at 376 (citing *Gauthier v. Continental Diving Services, Inc.*, 831 F.2d 559, 561 (5th Cir.1987)).

In sum, this Court's determination of the Lovelace Settlement's preclusive effect does not constituted a review of any aspect of the *Lovelace* court's decision to approve that settlement. Nor does the Court's decision represent a review of any issue "inextricably intertwined" with that decision by the Alabama court. Accordingly, the Court FINDS that the Rooker–Feldman doctrine does not apply in these circumstances.

## D. CERTIFIED QUESTION FOR APPEAL

At the May 15 hearing, the Court discussed with the parties the possibility of certifying the question of Alabama claim preclusion law to the Alabama Supreme Court. However, the Court has determined that this route would seriously disrupt the management of this complex litigation. It is not certain that the Alabama Supreme Court would exercise its discretion to accept a certified question, *see* Ala. Const., amend. 328 § 6.02(b), and the parties report that the process takes 10 to 18 months. Further, the parties agree that such a delay would be too disruptive in this case since the validity of Mobil's settlement should be determined before the remaining defendants enter into any kind of settlement. Accordingly, the Court has decided not to certify the question to the Alabama Supreme Court.

Nevertheless, the Court will certify the question for immediate appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides in pertinent part: "When a district judge, in making in· a civil action an order not otherwise appealable under this section [that disallows interlocutory appeals with certain exceptions], shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [ s]he shall so state in writing in such order."

Since the Court FINDS that there is substantial ground for difference of opinion as the preclusion issues decided in this Order, the Court CERTIFIES Order No. 20 for immediate appeal under § 1292(b).

## E. DISCOVERY WITH RESPECT TO MOBIL PENDING APPEAL OF THIS ORDER

Pursuant to the Lovelace Settlement, Mobil produced many documents which substantially satisfy the discovery needs of the putative nationwide class in MDL–1206. In

---

8. The Supreme Court explicitly rejected the Ninth Circuit's view that the Delaware court's lack of jurisdiction over federal securities claims categorically denied preclusive effect to its judgment approving the settlement of federal securities claims. 116 S.Ct. at 884.

accordance with the Court's Order No. 18 and the discussions at the conference of May 15, 1998, these Mobil documents must now be part of the document depository in MDL–1206. With the understanding that those Mobil documents· are already part of the depository, the Court STAYS discovery against Mobil by the putative classes and the named plaintiffs who did not opt-out of the Lovelace Settlement, pending Mobil's appeal to the Fifth Circuit.

Of course, the *McMahon* plaintiffs did opt-out of the Lovelace Settlement, and therefore Mobil's appeal of Order No. 21 on the full faith and credit issue will not have any impact on their individual claims. While the *McMahon* plaintiffs are stayed from discovery on class certification issues and on issues which pertain to its putative class, the Court allows the *McMahon* named plaintiffs to proceed with discovery against Mobil on issues relevant to their individual claims.

## F.  EXTENSION OF COURT'S ORDER NO. 2 TO MOBIL

In April 1998, this Court entered Order No. 2, a temporary injunction against named Plaintiffs and Defendants in MDL–1206 which prevents them from entering—collectively or separately—into any settlement agreement which releases or purports to release the federal antitrust claims brought in this litigation, without first notifying this Court of the settlement agreement and without first obtaining the Court's approval of said agreement. The Court explicitly excluded Mobil from Order No. 2, pending the resolution of Mobil's motion to dismiss (See Order No. 2 at 2, n. 2). Since the Court has denied Mobil's motion to dismiss, it now EXTENDS Order No. 2 to Mobil.

## IV.  *CONCLUSION*

For the foregoing reasons, the Court FINDS that the Lovelace Settlement does not have preclusion effect with respect to the federal antitrust claims which it purports to release. Consequently, the Court also FINDS that the Plaintiffs in MDL–1206 may bring their federal antitrust claims against Mobil. The Court DENIES Mobil's Motion to Dismiss and CERTIFIES this Order for immediate appeal. Pending Mobil's appeal, the Court STAYS in part and GRANTS in part discovery against Mobil. Finally, the Court EXTENDS Order No. 2 to Mobil.